OPINION
MILAN D. SMITH, Circuit Judge:
Defendant-Appellant Alfred Nash Villa-lobos appeals from his conviction for attempted extortion, in violation of 18 U.S.C. § 1951(a), and endeavoring to obstruct justice, in violation of 18 U.S.C. § 1503(a). Villalobos claims that the district court erred in instructing the jury that all threats to testify or provide information are “wrongful” under the Hobbs Act if made with the intent to induce or take advantage of fear, and in precluding a claim of right defense to the attempted extortion charge. We hold that even though the district court’s jury instruction was erroneous, that error was harmless. We also hold that the district court did not err in precluding Villalobos’s claim of right defense. We affirm.[1]
*955 FACTUAL AND PROCEDURAL BACKGROUND
This appeal arises out of the government’s investigation of Rabbi Amitai Yemeni (Rabbi Yemeni), the director of the Los Angeles Chabad Israel Center (Center), because of his efforts to help Israeli nationals obtain visas to come to the United States under the pretext that they were religious workers at the Center. Pursuant to Rabbi Yemeni’s scheme, such individuals would not work at the Center, but would be paid as if they were. They would then return to Rabbi Yemeni the money paid to them by the Center.
Orit Anjel (Orit) came to the United States, allegedly as a religious worker at the Center. Orit was accompanied by her husband Avraham Anjel (Avi). Orit purportedly worked at the Center, and Avi received her paychecks. Avi regularly cashed the checks at a bank, and, in turn, gave the money to Rabbi Yemeni. In 2009, Orit received a letter from Rabbi Yemeni terminating her work at the Center.
When Orit was terminated, Avi engaged Villalobos, a lawyer, to help him recoup the money he had paid to Rabbi Yemeni. Through his discussions with Avi, Villalo-bos learned that the government wanted to interview Orit as part of its investigation into Rabbi Yemeni’s scheme. Villalobos then approached Rabbi Yemeni, and later Rabbi Yemeni’s lawyer, Benjamin Gluck (Gluck), and demanded payment. Villalo-bos contends that he was merely helping the Anjels recover back wages for Orit’s work at the Center that Rabbi Yemeni had improperly required them to remit to him. The government, on the other hand, contends that Villalobos was attempting to extort Rabbi Yemeni, and that in return for payment, Villalobos promised that Orit would do “whatever it is we need her to do,” including impeding the investigation, lying to investigating Assistant U.S. Attorney Keri Axel (Axel), and repeating those lies to the grand jury.
Gluck informed Axel about Villalobos’s demands for payment, and agreed to record his subsequent communications with Villalobos. FBI Special Agent Gary Bennett was assigned to supervise Gluck’s communications with Villalobos. Gluck recorded his conversations with Villalobos, both in person and over the phone, in which they discussed various aspects of the plan to pay Villalobos in return for Orit’s favorable testimony during the investigation.
Villalobos was arrested after Gluck gave him a cash payment, shortly before Orit’s scheduled meeting with Axel. Villalobos was charged with one count of attempted extortion, 18 U.S.C. § 1951(a), and one count of endeavoring to obstruct justice, 18 U.S.C. § 1503(a). After a five day trial, the jury returned a guilty verdict on both counts, and the district court entered judgment. Villalobos timely appealed.
DISCUSSION
Extortion is defined in the Hobbs Act as “the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.” 18 U.S.C. § 1951(b)(2) (emphasis added).
Villalobos contends that the district court erred when it instructed the jury *956 that all threats to testify or provide information are “wrongful” under the Hobbs Act if made with the intent to induce or take advantage of fear. Closely related to his initial contention, Villalobos also argues that the district court erred when it precluded him from presenting a claim of right defense to the extortion charge. More specifically, Villalobos contends that he had a lawful claim to the property he demanded on behalf of Orit, and that as such his actions were not “wrongful” in the sense required by the Hobbs Act.
In United States v. Enmons, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973), the Supreme Court concluded that the use of force to achieve legitimate labor ends was not extortion. The Court interpreted the word “wrongful” in the Hobbs Act to “limit[] the statute’s coverage to those instances where the obtaining of the property would itself be ‘wrongful’ because the alleged extortionist has no lawful claim to that property.” Id. at 400, 93 S.Ct. 1007. It reasoned that “[t]he term ‘wrongful,’ which on the face of the statute modifies the use of each of the enumerated means of obtaining property — actual or threatened force, violence, or fear — would be superfluous if it only served to describe the means used. For it would be redundant to speak of ‘wrongful violence’ or ‘wrongful force’ since ... any violence or force to obtain property is ‘wrongful.’ ” Id. at 399-400, 93 S.Ct. 1007 (footnote omitted). The Court thus held that violence in the labor context is not wrongful for purposes of extortion if the defendant has a lawful claim to the property, see id. at 400, 93 S.Ct. 1007, or a “claim of right.”[2]
In United States v. Daane, 475 F.3d 1114, 1119-20 (9th Cir.2007), we held that the claim of right defense described in Enmons is unavailable in cases involving physical violence outside of the labor context, because such violence is inherently wrongful. We agreed with the reasoning of United States v. Zappola, 677 F.2d 264 (2d Cir.1982), which concluded that “Congress meant to punish as extortion any effort to obtain property by inherently wrongful means ... regardless of the defendant’s claim of right to the property.” Daane, 475 F.3d at 1120 (quoting Zappola, 677 F.2d at 268-69 (citations omitted)) (emphasis added). In other words, we recognized in Daane that outside the labor context, there are some attempts to obtain property that are so inherently wrongful that whether the defendant had a lawful claim to the property demanded is not relevant in determining whether extortion or attempted extortion has been proven.
In the present ease, we consider whether nonviolent threats outside the labor context can be “wrongful” under the Hobbs Act. The threats at issue in this case — threats to cooperate with an ongoing criminal investigation — are unlike the threats of force or violence outside the labor context discussed in Daane, because the threats at issue here are not inherently wrongful. Indeed, our law encourages individuals to cooperate with ongoing criminal investigations and proceedings.
We conclude that where a nonviolent threat to obtain property is not, by its nature, inherently wrongful, a court must first consider whether the threat, as actually used in the case at issue (the “means”), is wrongful, without regard to the property demanded by the defendant (the “ends”). If a nonviolent threat is wrongful under the circumstances, then it is sufficient to sustain a conviction for ex- *957 tortion or attempted extortion. In such situations, a court need not consider whether the defendant has a lawful claim to the property demanded. This approach is consistent with Daane, which recognized that certain “means” to obtain property are “wrongful” under the Hobbs Act without regard to the “ends” sought by the defendant. See Daane, 475 F.3d at 1119— 20. A similar means-ends framework was adopted by the First Circuit in United States v. Sturm, 870 F.2d 769 (1st Cir. 1989).[3]
Here, Villalobos’s “means” were his threats to have Orit cooperate with the investigation of Rabbi Yemeni, contingent upon payment, and his “ends” were the money, fraudulent tax receipts for donations, and a job or job recommendation for Orit that he demanded from Rabbi Yemeni. Unlike violent threats, threats to cooperate with an ongoing criminal investigation are clearly not wrongful per se under the Hobbs Act. However, if Villalobos’s threats were wrongful under the circumstances, they are sufficient to sustain a conviction for attempted extortion, without regard to the “ends” Villalobos sought.
The district court instructed the jury that a threat of testifying or providing information was “wrongful” under the Hobbs Act “if it [wa]s made with the intent to induce or take advantage of fear.... ” But by their nature, threats are intended to induce or take advantage of fear. Accordingly, an instruction that threats are wrongful if intended to induce or take advantage of fear would necessarily lead a jury to conclude that all threats are wrongful. The district court’s instruction was thus erroneous because it essentially read the “wrongful” element out of the Hobbs Act.
Since the district court’s instruction was erroneous, we must consider whether the district court’s error was “harmless beyond a reasonable doubt.” United States v. Awad, 551 F.3d 930, 938 (9th Cir.2009) (“If a jury instruction misstates an element of a statutory crime, the error is harmless if it is ‘clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.’ ”) (quoting Neder v. United States, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)); see also Neder, 527 U.S. at 8-10, 119 S.Ct. 1827 (holding that district court’s erroneous jury instruction was subject to harmless error review).
To determine whether the district court’s error was harmless, we first evaluate whether Villalobos’s threats to cooperate with the ongoing investigation were wrongful. The evidence is clear beyond a reasonable doubt that any rational jury would have found Villalobos guilty absent the erroneous jury instruction because Villalobos’s “means” to obtain the property — his threats to have his client Orit cooperate with, or alternatively, impede, the ongoing investigation, contingent upon payment — were unlawful, and therefore clearly wrongful under the circumstances. The evidence overwhelmingly shows that Villalobos threatened to have Orit change the story she would provide to the investi *958 gating authorities, depending on whether Rabbi Yemeni paid him. For example, Villalobos repeatedly promised to influence Orit to have her “shade[ ]” things as necessary and to “do whatever it is [they] need her to do” during her interview with Axel if Rabbi Yemeni paid him. Villalo-bos made clear through his conversations with Gluck that what Orit would tell government agents and the grand jury depended on whether Rabbi Yemeni acceded to his demands.
As evidence of the unlawfulness of Villa-lobos’s conduct, the jury necessarily found that Villalobos’s conduct was unlawful when it found him guilty of endeavoring to obstruct justice by instructing Orit to make false and misleading statements to the investigators in exchange for payment. The district court instructed the jury that in order to prove obstruction of justice, the government had to prove beyond a reasonable doubt that Villalobos sought payment and other compensation “from the target of a pending federal grand jury investigation in exchange for an agreement that [Villalobos] would cause his client, Orit ..., to make false and misleading statements to [Axel] or the grand jury conducting that investigation.... ” Because the record makes clear beyond a reasonable doubt that any rational jury would have found that Villalobos’s threats were wrongful because they were unlawful, his threats were sufficient to sustain a conviction for attempted extortion. See Awad, 551 F.3d at 938.
In light of the above, although the district court’s jury instruction on wrongfulness was erroneous, that error was harmless. Because Villalobos’s threats were wrongful under the Hobbs Act, we need not reach the question whether a claim of right defense is available in this context. Even if available, such a claim would do nothing to shield Villalobos from conviction of attempted extortion. The district court did not err by not providing a claim of right instruction.
AFFIRMED.

. Villalobos also alleges the following errors by the district court: (1) the sufficiency of the *955 evidence that Villalobos endeavored to obstruct justice; (2) the admission into evidence of two of Villalobos's statements; (3) Agent Gary Bennett’s and Benjamin Gluck's testimony concerning Villalobos's statements; and (4) the sentencing enhancement for abuse of a position of trust. We address these claims in a memorandum disposition filed contemporaneously with this opinion, and we affirm.

. The Supreme Court also relied on the legislative context and history of the Hobbs Act to conclude that the Act does not apply to the use of force to achieve legitimate labor ends. Enmons, 410 U.S. at 401-08, 93 S.Ct. 1007.

. In Sturm, the First Circuit recognized that "different considerations" apply in the context of extortion based on threats of force or violence than in the context of threats that are not inherently wrongful, like threats based on economic fear. Sturm, 870 F.2d at 772-73. It reasoned that extortion cases based on force or violence generally involve wrongful "means,” while extortion cases based on economic fear typically involve only allegations of wrongful "ends” (i.e. the defendant does not have a lawful claim to the property demanded). Id. at 773. It concluded that in such situations, the use of legitimate economic threats (the "means”) to obtain property is wrongful only if the defendant has no claim of right to the property demanded (the “ends”). Id.