**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

BORIS Y. LEVITT, on behalf of himself and all others similarly situated, DBA Renaissance Restoration; CATS AND DOGS ANIMAL HOSPITAL, INC.; TRACY CHAN, DBA Marina Dental Care; JOHN MERCURIO, DBA Wheel Techniques,
*Plaintiffs-Appellants*,

v.

YELP! INC.,
*Defendant-Appellee*.

</td>
<td>

No. 11-17676

D.C. Nos.
3:10-cv-01321-EMC
3:10-cv-02351-EMC


OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted
July 11, 2013—San Francisco, California

Filed September 2, 2014

Before: Richard A. Paez, Marsha S. Berzon,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge Berzon

# SUMMARY[*]

**California Unfair Competition Law / Civil Extortion**

The panel affirmed the district court's dismissal of an action by small business owners alleging that Yelp! Inc. extorted or attempted to extort advertising payments from them by manipulating user reviews and penning negative reviews of their businesses in violation of California state law.

The panel held that the business owners failed to state a claim for extortionate, and therefore unlawful, business practices in violation of California's Unfair Competition Law because, under the Hobbs Act and California law, unless a person has a pre-existing right to be free of the threatened economic harm, threatening economic harm to induce a person to pay for a legitimate service is not extortion. The panel held that, given these stringent requirements, the business owners failed sufficiently to allege that Yelp wrongfully threatened economic loss by manipulating user reviews. In addition, the business owners did not allege sufficient facts to support their claim that Yelp authored negative user reviews of their businesses.

The panel held that the business owners also failed to state a claim for unfair business practices in violation of the UCL.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

In addition, the business owners failed to state a claim for civil extortion or attempted civil extortion under California law.

## COUNSEL

Lawrence Dale Murray (argued), John Henning III, and Robert C. Strickland, Murray & Associates, San Francisco, California, for Plaintiffs-Appellants.

S. Ashlie Beringer (argued) and Molly Cutler, Gibson Dunn & Crutcher, Palo Alto, California; Gail Ellen Lees, Gibson Dunn & Crutcher, Los Angeles, California; and Aaron Schur, Yelp Inc., San Francisco, California, for Defendant-Appellee.

## OPINION

BERZON, Circuit Judge:

Today, individuals can share their opinions with the entire world courtesy of a few taps on the keyboard. The appellee in this case, Yelp! Inc. ("Yelp"), provides an online forum on which its users express opinions as to services ranging from dog walkers to taco trucks.

The appellees, Boris Levitt, Cats and Dogs Animal Hospital, Inc. ("Cats and Dogs"), John Mercurio, and Dr. Tracy Chan, are small business owners (collectively, "the business owners") who allege that Yelp extorted or attempted to extort advertising payments from them by manipulating user reviews and penning negative reviews of their businesses. The business owners filed a class-action lawsuit

against Yelp for violations of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq.*, civil extortion, and attempted civil extortion.

The district court dismissed the lawsuit for failure to state a claim. We review the dismissal de novo, *see Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012), and, holding that the facts and legal theories alleged in the business owners' complaint are insufficient to make out a prima facie case of unlawful or unfair business practices against Yelp, affirm.

## I.

### A. Yelp's Service

Yelp provides an online directory that allows registered users to post reviews and rank businesses on a scale of one to five stars. Based on these user rankings, Yelp then assigns businesses an overall "star" rating. Businesses cannot opt out of being listed on Yelp.

Not all user reviews submitted appear on a business's Yelp page or remain there after initially appearing. Reviews can be removed by the reviewer, removed by Yelp for violating Yelp's "Review Guidelines" or "Terms of Service," or removed by an automated filtering software maintained by Yelp. According to Yelp's website, its filtering system operates as follows:

> Th[e] system decides how established a particular reviewer is and whether a review will be shown based on the reviewer's involvement on Yelp. While this may seem

unfair . . . this system is designed to protect both consumers and businesses alike from fake reviews (i.e., a malicious review from a competitor or a planted review from an employee). The process is entirely automated to avoid human bias, and it affects both positive and negative reviews. It's important to note that these reviews are not deleted (they are always shown on the reviewer's public profile) and may reappear on your business page in the future.

Yelp also offers businesses advertising opportunities on its website for $300 to $1200 per month. Purchasing advertising allows a business to: appear in advertisements displayed above Yelp search results and on related business pages; prevent competitors' advertisements from appearing on its Yelp page listing; enhance its page listing with photos; and promote a favorite review to the top of its page.[1]

## B. The Allegations Against Yelp

The business owners maintain that Yelp created negative reviews of their businesses and manipulated review and ratings content to induce them to purchase advertising through Yelp. They urge that Yelp has thereby violated the UCL through acts of extortion and, when not successful in inducing payments to Yelp, attempted extortion. They also

---

[1] Yelp states that the specific benefits of advertising "have changed somewhat over time." For example, Yelp no longer permits businesses to highlight a "favorite review" and now offers a "video feature" for advertisers' Yelp pages.

allege separate causes of action for civil extortion and attempted civil extortion.

The business owners seek to represent two subclasses of businesses: those that declined to advertise with Yelp ("nonsponsors"), and those that have, at some point, purchased advertising ("sponsors"). They support their claims by alleging that "approximately 200 Yelp employees or individuals acting on behalf of Yelp have written reviews of businesses on Yelp" and that Yelp's Chief Executive Officer admitted to a New York Times reporter that Yelp has paid users to write reviews, although it does not do so directly anymore.

The Third Amended Complaint contains the following plaintiff-specific allegations:

a. *Boris Levitt*

Levitt, the owner of a furniture restoration business, alleged that several positive reviews disappeared from his business's Yelp page, causing the overall star rating of his business to decline. Levitt contacted Yelp to ask why a certain positive review had disappeared from his business's page and was told by a Yelp agent that she could not assist him.

Two months later, a Yelp sales representative contacted Levitt to invite him to advertise with Yelp. Levitt declined, stating that he already had a "high volume of users reviewing his business page" and "an overall rating of 4.5 stars."

According to Levitt, two days after he declined to purchase advertising, several five-star reviews disappeared

from his page, leaving his business with an overall star rating of three-and-a-half stars. Levitt asserted that "Yelp manipulated the reviews of [his] business because he did not purchase advertising," and did so "as a threat" made to induce him to purchase advertising. As a result of the lower overall rating, Levitt alleged, his business reputation and revenues declined.

b. *Cats and Dogs Animal Hospital*

Cats and Dogs is an animal hospital in Santa Barbara. Its allegations center on reviews from two negative users.

Cats and Dogs contacted Yelp to request removal of the first negative review, posted by Yelp user "Chris R.," because the review referred to a visit that occurred outside of Yelp's twelve-month policy. That review was subsequently removed, but another negative review from a different user, "Kay K.," showed up soon afterwards on the Cats and Dogs Yelp page.

Cats and Dogs states that "soon after the appearance of these negative reviews, [it] began receiving frequent, high-pressure calls from Yelp sales representatives, who promised to manipulate [Cats and Dogs'] listing page in exchange for [Cats and Dogs'] purchasing . . . advertising." Cats and Dogs alleged it received a call from a Yelp sales representative who stated that Yelp would "hide negative reviews" or "place them lower on [Cats and Dogs] listing page" if Cats and Dogs purchased advertising. Cats and Dogs declined. According to Cats and Dogs, a week after it rejected this particularly explicit advertising pitch, the Chris R. review reappeared, followed by a second negative review from Kay K. Cats and Dogs alleged that "Yelp re-posted the 'Chris R' and two 'Kay

K' reviews and/or manufactured its own reviews to instill fear in [Cats and Dogs] to advertise." Cats and Dogs further alleged that "[a]s a result of Yelp's conduct," Cats and Dogs' business revenues and reputation were injured.

c. *Mercurio*

Mercurio owns Wheel Techniques, an automobile body repair shop. He alleged that Yelp posted "false reviews," meaning reviews not composed by actual customers, "as a threat to induce Wheel Techniques to advertise." He based his allegation on the appearance of "negative reviews . . . on Wheel Techniques' Yelp review page" that did not correspond to customer records and contemporaneous "telephone calls from Yelp requesting that [Wheel Techniques] purchase advertising."

Mercurio stated that he "called Yelp to inquire about why one of his competitors, known in the industry for its 'shotty [sic] work,'" had a high overall star rating. Yelp allegedly responded that the competitor advertised and that "[Yelp] work[s] with your reviews if you advertise with us." Later, when Mercurio declined an offer to advertise on Yelp, he alleges that "[w]ithin minutes," "a one-star review was moved to the top of [Wheel Techniques'] Yelp review page . . . as a threat to cause Wheel Techniques to fear that if it did not pay Yelp money to advertise, the negative review would remain at the top of its Yelp review page."

Mercurio also alleged that he "was told . . . that a former Yelp employee stated that Yelp . . . terminated a group of sales employees . . . as a result of scamming related to advertising." The Third Amended Complaint does not indicate who told Mercurio this information, nor does it

identify the Yelp employee who allegedly made the original statement or of what the "scamming related to advertising" consisted.

d.  *Dr. Tracy Chan*

Chan, a dentist, stated that she received calls from a Yelp sales representative "offer[ing] her lots of benefits, such as the opportunity to keep Chan's business ratings high by hiding or burying bad reviews," if she advertised with Yelp. According to Chan, the sales representative stated that "although many Yelp reviews were manipulated by a computer system, Yelp employees also had the ability to remove reviews from a business's Yelp page."

Chan initially declined to purchase advertising from Yelp. Two or three days after doing so, "Yelp removed nine 5-star reviews" from her page, causing her overall rating to drop from five to three stars. Chan called Yelp to ask about the decline in her overall rating, and was told that "Yelp 'tweaks' the ratings every so often and that [Yelp] could help her if she signed up for advertising services with Yelp." Chan alleged that "Yelp removed positive reviews . . . as a threat to cause Chan to fear that if she did not purchase advertising . . . her business's overall star rating would stay low."

"[O]ut of fear of further manipulations," Chan signed an advertising contract with Yelp. According to Chan, just days after signing the contract, her "overall rating increased to 4 stars and various five star reviews were reinstated by Yelp." She believes the rating increase was the result of her agreeing to advertise with Yelp.

Several months later, a Yelp sales agent asked Chan whether she was interested in increasing her advertising purchase with Yelp.  When Chan declined, she "noticed that her reviews were again declining."  That same month, Chan cancelled her existing advertising contract with Yelp.  Chan alleged that after she cancelled, "Yelp removed positive reviews . . . and replaced them with negative reviews . . . to cause Chan to fear that if she did not pay Yelp for advertising, Yelp would continue to remove positive reviews from her [page]."

Chan's overall rating fluctuated over the next year and a half.  She attributed dips in her rating to specific interactions with Yelp.  For example, Chan stated that Yelp "removed several positive reviews," prompting her to "post a negative review about Yelp's conduct" on her Yelp page.  "Within two to three days," she alleged, Yelp removed more positive reviews, causing her overall rating to "[fall] to 3 stars."  Over a year later, Chan alleged that her overall rating fell again, this time from four stars to three and a half stars, when "Yelp removed six positive reviews" from her page after she "posted a negative review about Yelp to her own website."  Chan asserted that the removal of positive reviews was done "to induce [her] to pay for advertising and/or to discourage her from posting negative information about Yelp."

## C.  District Court's Rulings

The district court dismissed the business owners' Second Amended Complaint for failure to state a claim upon which relief could be granted.  With respect to the business owners' claim that Yelp's conduct violated California's UCL, the district court ruled that: theories of extortion for failure to remove negative user reviews were covered by Yelp's

immunity under the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230(c)(1); there were insufficient facts from which to infer that Yelp authored or manipulated the negative reviews and ratings; and there were insufficient factual allegations from which to infer communication of an extortionate threat.

After the business owners amended their complaint to fix these deficiencies, the district court again dismissed it for failure to state a claim. Describing the allegations that Yelp manufactures negative reviews as "entirely speculative," the district court concluded that the Third Amended Complaint failed to allege facts sufficient to support a conclusion that Yelp authored content. Even assuming Yelp employees had authored reviews, the district court found only "a mere possibility" that Yelp authored content to extort advertising payments. The district court further found that "allegations based on Yelp's purported manipulation of user-generated content" were immunized by the CDA. The separate civil extortion and attempted civil extortion claims failed for the same reasons.

This appeal followed.

## II.

The business owners maintain that Yelp attempted to extort and did extort advertising payments from them by wrongfully threatening them with economic loss. We hold that the business owners have failed to state a claim under California law on which relief can be granted. Accordingly, we do not address Yelp's defense of immunity under the CDA.

**A. California's Unfair Competition Law**

California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "[I]t establishes three varieties of unfair competition — acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted).

In prohibiting "any unlawful" business practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.* (internal quotation marks omitted); *see also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). The business owners premise their "unlawful" UCL claim on Yelp's allegedly extortionate conduct.

Specifically, they allege that the following conduct amounts to extortion: (1) Yelp manipulating user-generated reviews to induce them to buy advertising; and (2) Yelp creating its own negative reviews of their businesses to induce them to buy advertising. They do not assert any claims based on failure to remove negative third-party reviews of their businesses.

We conclude, first, that Yelp's manipulation of user reviews, assuming it occurred, was not wrongful use of economic fear, and, second, that the business owners pled insufficient facts to make out a plausible claim that Yelp authored negative reviews of their businesses. Accordingly, we agree with the district court that these allegations do not support a claim for extortion.

**B.  Unlawful (Extortionate) Business Practices**

We first consider whether the business owners have stated a claim of extortionate, and therefore unlawful, business practices under California's UCL.

**1**

The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by *wrongful* use of actual or threatened force, violence, or fear, or under color of official right."   18 U.S.C. § 1951(b)(2) (emphasis added).  Threats of economic harm made to "obtain[] . . . property from another," *id.*, are not generally considered "wrongful," *id.*, where the alleged extortioner has a legitimate claim to the property obtained through such threats. *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 523 (3d Cir. 1998).  Therefore, unless a person has a pre-existing right to be free of the threatened economic harm, threatening economic harm to induce a person to pay for a legitimate service is not extortion. *See United States v. Vigil*, 523 F.3d 1258, 1265 (10th Cir. 2008) (citing *United States v. Enmons*, 410 U.S. 396, 400 (1973)); *Viacom Intern. Inc. v. Icahn*, 747 F. Supp. 205, 213 (S.D.N.Y. 1990).

*Enmons* is the starting point for the interpretation of "wrongful" in the extortion statute.  410 U.S. 396 (1973). *Enmons* held that the use of violence in a labor strike to obtain higher wages and other benefits did not constitute extortion under the Hobbs Act.  *Id.* at 400.  In so holding, *Enmons* explained that "[t]he term 'wrongful,' which . . . modifies the use of each of the enumerated means of obtaining property — actual or threatened force, violence, or fear — would be superfluous if it only served to describe the

means used." *Id.* at 399. "Rather, 'wrongful' . . . limits the statute's coverage to those instances where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property." *Id.* at 400. Thus, *Enmons* concluded that the "[Hobbs] Act does not apply to the use of force to achieve legitimate labor ends." *Id.* at 401. *Enmons*' reasoning "created the claim of right defense to charges of extortion under the Hobbs Act." *United States v. Sturm*, 870 F.2d 769, 772 (1st Cir. 1989).

As to *violent* threats, we have "declined to extend *Enmons* beyond the context of a labor dispute," *United States v. Daane*, 475 F.3d 1114, 1119 (9th Cir. 2007), "read[ing] *Enmons* as holding only that the use of violence to secure legitimate collective bargaining objectives is beyond the reach of the Hobbs Act," *United States v. Thordarson*, 646 F.2d 1323, 1327 (9th Cir. 1981). We have also recognized that, aside from violence, "some attempts to obtain property . . . are so inherently wrongful that whether the defendant had a lawful claim to the property demanded is not relevant in determining whether extortion or attempted extortion has been proven." *United States v. Villalobos*, 748 F.3d 953, 956 (9th Cir. 2014).

Though the claim-of-right defense has been limited in other contexts, *see id.*, it continues to apply to allegations of extortion involving threats of economic harm. So long as the alleged extortioner seeks payment for services that have some "objective value," *Viacom*, 747 F. Supp. at 212, n.7, he has "a lawful claim to the property obtained." *Brokerage Concepts*, 140 F.3d at 524. Consequently, barring any "preexisting right to be free of the economic fear . . . utilized" on the part of the threatened party, *United States v. Tobin*, 155 F.3d 636, 640 (3d Cir. 1998), "purely economic threats" do not violate the

Hobbs Act, *id.*; *see also George Lussier Enters., Inc. v. Subaru of New England, Inc.*, 393 F.3d 36, 50 (1st Cir. 2004).

In *Brokerage Concepts*, for example, the Third Circuit considered whether payments received by a health maintenance organization ("HMO") were the product of extortion by wrongful use of economic fear. 140 F.3d at 501. In that case, the HMO refused to approve a pharmacy branch's application to join the HMO's network of medical prescription providers unless the branch discontinued its contractual relationship with a particular health care consulting firm and gave its business to one of the HMO's subsidiaries. *Id.* The HMO also applied various "hard-ball" negotiation tactics, such as auditing and putting a "freeze" on the pharmacy's other locations, which had previously been approved to join the HMO's network. *Id.* at 501, 506. Eventually, the pharmacy branch acquiesced, dropped its existing healthcare consulting firm, and made payments to the HMO's subsidiary.

Recognizing the undoubted value of access to the HMO's network, *Brokerage Concepts* concluded that the payments to the HMO's subsidiary were not the product of extortion. *Id.* at 525–26. No law prohibited the HMO from conditioning access to its network on such payments, and the pharmacy had no "right" to access the network. *Id.* at 526. *Brokerage Concepts* therefore declined to interpret a "mutually beneficial exchange of property" between "two private parties" as "the wrongful use of economic fear." *Id.*

Similarly, in *Sturm*, the First Circuit held that "the term 'wrongful' requires the government to prove, in cases involving extortion based on economic fear, that the defendant knew that he was not legally entitled to the

property that he [tried to obtain]." 870 F.2d at 774. Insisting that "hard bargaining" does not amount to extortion, the Seventh Circuit has likewise concluded that "[w]here the defendant has a claim of right to property and exerts economic pressure to obtain that property, that conduct is not extortion and no violation of the Hobbs Act has occurred." *Rennell v. Rowe*, 635 F.3d 1008, 1011, 1012 (7th Cir. 2011); *see also United States v. Capo*, 791 F.2d 1054, 1062–63 (2d Cir. 1986) (noting "that fear of economic loss plays a role in many business transactions that are entirely legitimate" and therefore the Hobbs Act reaches only "the exploitation of the fear of economic loss in order to obtain property to which the exploiter is not entitled"), *vacated in part on other grounds*, 817 F.2d 947 (2d Cir. 1987) (en banc).

As to what one may threaten to do in the economic context, *Rothman v. Vedder Park Management*, is instructive. 912 F.2d 315 (9th Cir. 1990). In that case, a group of tenants sued the owner and operator of a mobile-home park, claiming the owner violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68, by using extortionate tactics to induce them to sign leases. *Id.* at 316. We considered, under both the Hobbs Act and California law, whether alleged threats that non-signers would have to pay their own utility bills and would be subject to future rent increases of undisclosed amounts were wrongful. *Id.* at 317–18.

We concluded that these threats were not wrongful and therefore not extortionate. *Id.* at 318. Because the tenants did not allege that the park owner "may not raise the rent of those who have not signed the lease or that it may not refuse to pay their utility bills," the tenants had no pre-existing right to be free of such threats. *Id.* Moreover, although the park owner

threatened to raise the rent, he had a right to condition use of his mobile-home park on payment. *Id*. The threats alleged did not, therefore, amount to extortion. *Id.* In so holding, we relied on the "general rule" that "what you may do in a certain event you may threaten to do, that is, give warning of your intention to do in that event, and thus allow the other person the chance of avoiding the consequences." *Id.* (quoting *McKay v. Retail Auto. Salesmen's Local Union No. 1067*, 16 Cal. 2d 311, 321 (1940)).

*Sosa v. DIRECTV, Inc.*, is similarly instructive. 437 F.3d 923, 939–40 (9th Cir. 2006). In that case, we considered whether claim-settlement letters sent by DIRECTV constituted "extortion" within the meaning of the Hobbs Act and California law. *Id.* at 939. We declined to adopt a broad construction of the Hobbs Act, noting that while "[i]t is certainly possible, perhaps even likely, that the threat of being faced with a costly lawsuit induced 'fear' in [the plaintiffs], . . . extortion requires more than fear." *Id.* (citing *Rothman*, 912 F.2d at 318). We emphasized that "[t]he use of the fear must be 'wrongful.'" *Id.* (citing *Rothman*, 912 F.2d at 318). And, although "the assertion of weak claims predicated on unsupportable factual allegations may be said in some sense to be wrongful," we rejected a reading of either the Hobbs Act or California's extortion statute that would impose liability for "threats of litigation where the asserted claims do not rise to the level of a sham." *Id.* at 939–40.[2]

Like the Hobbs Act, California law states that "[e]xtortion is the obtaining of property from another, with his consent . . .

---

[2] Our holding in *Sosa* was also influenced by the need to avoid an interpretation of extortion that would impinge on the defendant's First Amendment rights. *Id.* at 940.

induced by a *wrongful* use of force or fear." Cal. Penal Code § 518 (emphasis added). California law also provides that "[f]ear, such as will constitute extortion, may be induced by a threat . . . [t]o do an *unlawful* injury to the person or property of the individual threatened," *id.* § 519(1) (emphasis added), "thus excluding fear induced by threat to do a lawful injury," *People v. Beggs*, 178 Cal. 79, 83 (1918); *see also In re Nichols*, 82 Cal. App. 73, 77 (Dist. Ct. App. 1927). Accordingly, the elements of extortion under federal and California law are substantially the same. *See Sosa*, 437 F.3d at 939–40; *Rothman*, 912 F.2d at 317–18. The plaintiffs here point to no pertinent distinctions between the federal and California statutes.[3]

In sum, to state a claim of economic extortion under both federal and California law, a litigant must demonstrate either that he had a pre-existing right to be free from the threatened harm, or that the defendant had no right to seek payment for the service offered. Any less stringent standard would transform a wide variety of legally acceptable business dealings into extortion.

**2**

Given these stringent requirements, the business owners in this case failed sufficiently to allege that Yelp *wrongfully* threatened economic loss by manipulating user reviews.

---

[3] Although we have noted that California does not have a claim-of-right defense, *see Gomez v. Garcia*, 81 F.3d 95, 97 (9th Cir. 1996), the state authority we relied on for that conclusion did not involve threats of economic harm, *see, e.g.*, *Beggs*, 178 Cal. at 83 (threats to accuse a person of a crime); *People v. Serrano*, 11 Cal. App. 4th 1672, 1678 (Ct. App. 1992) (recovering debt by kidnapping and holding a person for ransom).

To start, we note that there is no allegation that Yelp directly threatened economic harm if the business owners refused to purchase advertising packages from Yelp. While the lack of such express threats does not alone dispose of the extortion claims, *see United States v. Marsh*, 26 F.3d 1496, 1501 (9th Cir. 1994), it does make the business owners' case considerably more difficult. Absent explicit threats of economic harm, the business owners must allege sufficient facts to support the inference, *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013), that Yelp "inten[ded] . . . to induce payment through the use of threats or the exploitation of [economic] fears," *United States v. Greger*, 716 F.2d 1275, 1278 (9th Cir. 1983).

We begin with Chan, who alleges that Yelp extorted her by removing positive reviews from her Yelp page. Chan asserts that she was deprived of the benefit of the positive reviews Yelp users posted to Yelp's website, and that, had she received the benefits of the positive reviews, they would have counteracted the negative reviews other users posted.

But Chan had no pre-existing right to have positive reviews appear on Yelp's website. She alleges no contractual right pursuant to which Yelp must publish positive reviews,[4] nor does any law require Yelp to publish them. By withholding the benefit of these positive reviews, Yelp is withholding a benefit that Yelp makes possible and maintains. It has no obligation to do so, however. Chan does not, and could not successfully, maintain that removal

---

[4] Chan alleges that she purchased advertising after a Yelp representative told her that Yelp could "tweak" her reviews if she advertised with Yelp. But Chan does not allege that this pledge was part of her advertising contract with Yelp.

of positive user-generated reviews, by itself, violates anything other than Yelp's own purported practice. "[W]hat [Yelp] may do in a certain event [Yelp] may threaten to do." *Rothman*, 912 F.2d at 318. Moreover, Chan does not allege that the advertising Yelp sold her was a valueless sham, or that she was already entitled to the advertising privileges Yelp induced her to buy. *See Viacom*, 747 F. Supp. at 212 n.7. We thus "deal with a very narrow subset of the potential universe of extortion cases: one involving solely the accusation of the wrongful use of economic fear where two private parties have engaged in a mutually beneficial exchange of property." *Brokerage Concepts*, 140 F.3d at 525–26.

As Chan alleges no independent barrier to the ratings-manipulation of which she complains, and as there is no allegation that Yelp's advertising services are, objectively, worthless, *see Viacom*, 747 F. Supp. at 212 n.7, any implicit threat by Yelp to remove positive reviews absent payment for advertising was not wrongful within the meaning of the extortion statutes.

This conclusion is not entirely the end of the matter, as Chan alleges that the ratings manipulation negatively affected her "business's reputation." But Chan does not connect her claim of reputational harm to a specific allegation of wrongful conduct.[5] We note, too, that unlike the other

---

[5] By the reference to reputational injuries, the business owners may have meant to invoke trade libel law as the basis for the wrongfulness element of extortion. But as the business owners have not pled the other elements of trade libel, *see Gregory v. McDonnel Douglas Corp.*, 17 Cal. 3d 596, 600 (1976); *City of Costa Mesa v. D'Alessio Invs., LLC*, 214 Cal. App. 4th 358, 375–76 (Ct. App. 2013), we do not decide whether a sufficient

business owners, Chan at one time had a contractual relationship with Yelp. It may be that by manipulating Chan's ratings to induce her to increase her advertising dollars, Yelp "breached [its] duties under the contract[ ]." *Rennell*, 635 F.3d at 1014. "But those claims should be pursued through state-law theories of contract . . . — not [extortion]." *Id.*

Chan's pleadings thus fail to allege that deflation of her business's overall rating resulting from removing positive reviews constitutes "wrongful" conduct, and she therefore fails to state a claim of economic extortion.

Levitt and Mercurio similarly allege that Yelp attempted to extort them by removing positive user reviews. As with Chan, such allegations are insufficient to show that Yelp threatened them wrongfully.

The other brand of extortionate ratings manipulation the business owners allege is the re-posting of negative reviews and the placement of negative reviews at the top of the business owners' Yelp pages. Business owners Mercurio and Cats and Dogs bring these allegations. Here, too, however, Cats and Dogs and Mercurio have no claim that it is independently wrongful for Yelp to post and arrange actual user reviews on its website as it sees fit. The business owners may deem the posting or order of user reviews as a threat of economic harm, but it is not unlawful for Yelp to post and sequence the reviews. As Yelp has the right to charge for legitimate advertising services, the threat of economic harm that Yelp leveraged is, at most, hard bargaining.

---

allegation of trade libel could supply the wrongfulness element for extortion purposes.

**C. Yelp's Alleged Authoring of Negative Reviews**

We next consider whether the business owners have adequately pled a claim of extortion based on Yelp's alleged authoring of negative reviews.

To survive a motion to dismiss for failure to state a claim after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the business owners' factual allegations "must . . . suggest that the claim has at least a plausible chance of success." *In re Century Aluminum*, 729 F.3d at 1107. In other words, their complaint "must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Following *Iqbal* and *Twombly*, we have attempted to reconcile the plausibility standard as set out in those rulings with the more lenient pleading standard the Court has also, at times, applied. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002) and *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam)). While recognizing some tension among the Court's pleading-standards cases, we have settled on a two-step process for evaluating pleadings:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the

opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). In all cases, evaluating a complaint's plausibility is a "context-specific" endeavor that requires courts to "draw on . . . judicial experience and common sense." *Id.* at 995–96 (internal quotation marks omitted).

Applying this standard, we conclude that the business owners have not alleged sufficient facts to support their claim that Yelp authored negative user reviews of the businesses in question.

Only two business owners allege that Yelp authored negative reviews of their businesses: Cats and Dogs and Mercurio. Cats and Dogs' allegations concern negative reviews from just two users, Chris R. and Kay K. Cats and Dogs admits that the Chris R. review corresponds with an actual client visit, as it complained to Yelp that the review was posted more than a year after the visit. In light of this acknowledgment, common sense suggests that Yelp was not the author of the Chris R. review. So the allegation that Yelp itself authored negative reviews must boil down to the two reviews attributed to Kay K.

The facts alleged in the complaint do not plausibly establish that Yelp authored the Kay K. review. Yelp is a forum for consumers to review businesses, and huge numbers of consumers do just that. For Cats and Dogs to make a

plausible claim that Yelp authored the Kay K. reviews, it must plead facts tending to demonstrate that the Kay K. review was not, as is usual, authored by a user. Cats and Dogs pleads no such facts. In the Second Amended Complaint, Cats and Dogs suggested that the Kay K. reviews were authored not by Yelp, but by the same person who authored the Chris R. posts or by a person who had vandalized the hospital. And while the Third Amended Complaint alleges generally that "approximately 200 Yelp employees or individuals acting on behalf of Yelp have written reviews of business on Yelp," and that Yelp's CEO admitted in a New York Times blog post that Yelp has paid users to write reviews, nothing connects these general allegations to the specific, negative reviews complained of here.

Mercurio fares no better. He surmises that because he has no records of doing the work cited in the review, and because the names of the users do not match the names of his customers, Yelp authored the negative reviews. But even if a particular review was not accurate as to the work done or the customer's name, the inaccuracy does not make it plausible that it was Yelp — as opposed to a competitor, or a disgruntled customer hiding behind an alias, or an angry neighbor, just to give a few possibilities — that authored the offending review.

Accordingly, we agree with the district court that the Third Amended Complaint does not allege sufficient facts from which to infer that Yelp authored the negative reviews of which Cats and Dogs and Mercurio complain.

For these reasons and the reasons explained in Part II.B of this opinion, we conclude that none of the business owners

have stated a claim of "unlawful" conduct on the basis of extortion.  We therefore affirm the dismissal of the separate claims of civil extortion and attempted civil extortion, as well.**[6]**

## D.  The UCL "Unfair" Prong

"Each prong of the UCL is a separate and distinct theory of liability," and so "the 'unfair' practices prong offers [plaintiffs] an independent basis for relief." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  At least with respect to business-competitor cases, to state a claim under the UCL's "unfair" prong the alleged unfairness must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech*, 20 Cal. 4th at 186–87.

The business owners acknowledge that the *Cel-Tech* standard applies here.  Although this case is not a suit involving "unfairness to the *defendant's* competitors," *Lozano*, 504 F.3d at 735 (emphasis added), as Yelp does not compete with the business owners, the crux of the business owners' complaint is that Yelp's conduct unfairly injures their economic interests to the benefit of other businesses who choose to advertise with Yelp.

In business-competitor claims,  "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or

---

**[6]** We do so without reaching the question of whether California courts recognize a distinct tort of civil extortion.

harms competition." *Cel-Tech*, 20 Cal. 4th at 187. Under this standard, the business owners have not stated a claim that Yelp violated the UCL's prohibition of unfair business practices.

The business owners do not allege that Yelp violated any "legislatively declared policy" other than the prohibitions on extortion discussed above. For the reasons discussed, they have not pled facts sufficient to support an inference of extortion.

As to violations of antitrust principles, the business owners allege generally that Yelp's conduct "harms competition by favoring businesses that submit to Yelp's manipulative conduct and purchase advertising to the detriment of competing businesses that decline to purchase advertising." This very general allegation does not satisfy *Cel-Tech*'s requirement that the effect of Yelp's conduct amounts to a violation of antitrust laws "or otherwise significantly threatens or harms competition." *Id.*

For these reasons, we conclude that the UCL claim fails under the "unfair" prong, as well.[7]

---

[7] The business owners suggest that the district court should have allowed them to participate in discovery before granting the motion to dismiss, so that the business owners could have marshaled facts to support their allegations. Because the business owners sought discovery relating to Yelp's challenge to their standing, which Yelp does not renew on appeal, and because we affirm the dismissal based on the Third Amended Complaint's failure to state a claim, the discovery sought could not have affected our decision.

## III.

The business owners' Third Amended Complaint fails to state a claim under California's unfair competition laws, and fails to sufficiently allege extortion or attempted extortion.

We emphasize that we are not holding that *no* cause of action exists that would cover conduct such as that alleged, if adequately pled.[8] But for all the reasons noted, extortion is an exceedingly narrow concept as applied to fundamentally economic behavior.  The business owners have not alleged a legal theory or plausible facts to support the theories they do argue.

The judgment of the district court is, accordingly, **AFFIRMED.**

---

[8] Again, we are not considering whether the CDA would pose a barrier to any such claims.