**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 2 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WILLIAM EDWARDS; et al., | No. 20-15070 |
| Plaintiffs-Appellants, | D.C. No. 3:18-cv-04609-WHA |
| v. | |
| LEADERS IN COMMUNITY ALTERNATIVES, INC., | MEMORANDUM[*] |
| Defendant-Appellee, | |
| and | |
| SUPERCOM, INC.; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted January 12, 2021
San Francisco, California

Before: WALLACE and M. SMITH, Circuit Judges, and RESTANI,[**] Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

William Edwards, Robert Jackson, James Brooks, and Kyser Wilson (collectively, Appellants) appeal from the district court's dispositive orders and its summary judgment in favor of Leaders in Community Alternatives (LCA). The parties are familiar with the facts, so we do not recount them here except as necessary to provide context to our ruling. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's decision to grant a motion to dismiss for failure to state a claim de novo. *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317 (9th Cir. 2017). We review the district court's denial of a motion for leave to amend a complaint for abuse of discretion. *See Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 760 (9th Cir. 2017). Finally, we review the district court's summary judgment de novo. *Urbina v. Nat'l Bus. Factors Inc.*, 979 F.3d 758, 762 (9th Cir. 2020). We AFFIRM.

I.

Pursuant to the County of Alameda's contract with LCA to provide electronic-monitoring services for criminal defendants on pre-trial or home detention, the California Superior Court and the probation department respectively referred Appellants to LCA's program. LCA's program is fully funded by fees charged to participants, and LCA's ability-to-pay determination during the relevant period was based on household income. The Appellants signed an enrollment form with LCA, which included a "Supervision Fee Agreement" that imposed an enrollment fee and

2

a commitment to pay specified daily fees.  Appellants also agreed to pay LCA the first fourteen days of their fees in advance and acknowledged that failure to make timely payments could result in their termination from the program.

LCA's 2017 client handbook provided that LCA had the right to submit a report to the court if clients failed to pay or otherwise failed to comply with the program's regulations.  The handbook also notified clients that failure to adhere to the conditions could lead to termination from the program, and possible revocation and incarceration.  Next, the handbook advised clients that LCA would

> *work with a participant regarding their fees, if there is a change in their financial status while on the program.  Participants have the right to a court hearing if they are unable to come to an agreement with LCA regarding the terms of payment, if they dispute LCA's assessment of their fees, or if they are, or become unable to pay.  The court will then determine the participant[']s ability to pay, and set the amount and terms of payment.*

Finally, the handbook listed the governing state codes that provide for the participant's rights.

Appellants filed a putative class action against LCA and others and asserted several claims, including a Racketeer Influenced and Corrupt Organizations Act (RICO) claim.  Appellants assert that they each paid LCA amounts they could not afford because their LCA case workers allegedly threatened them with "violation" reports if they failed to pay, which Appellants allegedly believed would send them to jail.  Appellants also claim that LCA did not conduct an inquiry into their ability

3

to pay these fees. Despite the clear language in the handbook, they contend that LCA did not inform them that they only needed to pay what they could afford or that they had a right to have a judge determine their fees.

The district court dismissed all defendants except for LCA, as well as each of the claims except for the RICO claim. The district court rejected the wire fraud and Travel Act predicates. The district court also rejected Edwards's and Brooks's Hobbs Act and state extortion predicates because they failed to allege sufficient facts; Edwards and Brooks were dismissed from the case. The district court permitted Jackson and Wilson to proceed on the Hobbs Act and state extortion predicates of their RICO claim. The district court concluded its decision by directing Appellants to file an amended complaint within 35 days of its order, and the order listed January 4, 2019, as the deadline. The district court clarified its order on July 11, 2019, stating that it had dismissed Edwards and Brooks from the action because their counsel had insisted that they remained part of the action. Edwards and Brooks filed motion for leave to amend on July 25, 2019, which the district court denied as untimely and prejudicial to LCA at that stage of the proceeding.

LCA moved for summary judgment, which the district court granted. The district court held that the LCA employees' allegedly threatening statements to Wilson and Jackson were not wrongful under the Hobbs Act or the California Penal Code, so that the extortion claims failed. The district court reasoned that the

4

statements were not wrongful because they occurred in the context of repeated cautions that LCA would report failures to pay to the court, and that the judge might remand them to jail. Jackson and Wilson appeal from the district court's summary judgment. Edwards and Brooks appeal from the district court's dismissal of their RICO extortion claims and denial of their motion for leave to amend.

A complaint must contain sufficient factual allegations to state a claim for relief that is "plausible on its face" to survive a motion to dismiss for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint "does not need detailed factual allegations," but the Appellants must provide "more than labels and conclusions" to withstand scrutiny under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). We construe the pleaded facts "in the light most favorable to the nonmoving party." *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013) (citations omitted).

## II.

We assume, without deciding, that the district court's dismissal of Edwards and Brooks from the action for failure to state a claim was error. Edwards's and Brooks's factual allegations had the same level of detail as those alleged by Jackson and Wilson, and they allege the same harm. Yet the district court did not abuse its discretion in denying Edwards's and Brooks's belated motion for leave to amend their claims because of the undue delay and prejudice to LCA. Rule 15(a) of the

5

Federal Rules of Civil Procedure provides that leave to amend "shall be freely give[n] when justice so requires." However, leave is not granted automatically. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). The district court must consider the following five factors when assessing whether to grant leave to amend: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Prejudice to the opposing party carries "the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The district court's holding that there was undue delay in Edwards's and Brooks's motion to amend is well-supported by the record. In addition, LCA repeatedly informed Edwards's and Brooks's counsel that LCA considered them dismissed from the action based on the district court's order. Yet Edwards and Brooks filed their motion for leave to amend only after LCA requested clarification from the district court. Overall, the delay was over seven months, and the only additions to the proposed first amended complaint were seven additional factual allegations that had been known to Edwards and Brooks before they filed their original complaint. As for undue prejudice, LCA maintains that it did not seek discovery from Edwards and Brooks as parties. Instead, the information LCA sought from them during their deposition and from subpoenas was as witnesses for purposes

6

of combatting the class certification.  The district court, therefore, did not abuse its discretion in denying Edwards's and Brooks's motion for leave to amend.

Finally, the district court's dismissal of Edwards and Brooks was harmless because the district court's summary judgment in favor of LCA was appropriate under the circumstances.  Jackson and Wilson failed to provide evidence to support the essential elements of their RICO claim; specifically, evidence that they were directly threatened by LCA employees, an inference that LCA employees intended to threaten them, or that the threats were wrongful.  At oral argument, counsel for Edwards and Brooks conceded that if the district court's summary judgment against Jackson and Wilson was valid it would be valid against them as well because of the similarities of their claims.  They are correct.  We, therefore, affirm the dismissal of Edwards and Brooks as harmless error and the denial of the motion for leave to amend.

### III.

Summary judgment is appropriate if there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "However, if the nonmoving party contests summary judgment, the alleged factual dispute must be both genuine and material to the nonmoving party's claims." *Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021).  We view justifiable inferences in the light most favorable to the nonmoving party; however, the

7

nonmoving party "may not rest upon mere allegations or denials of [its] pleading." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (citations omitted); Fed. R. Civ. P. 56(e). "Therefore, the existence of 'some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *Liberty Lobby*, 477 U.S. at 247–48 (emphasis omitted).

We focus on the wrongfulness issue of the extortion predicates for the civil RICO claim. Hobbs Act extortion involves "the obtaining of property from another, with his consent, induced by *wrongful* use of . . . fear." 18 U.S.C. § 1951(b)(2) (emphasis added). California law defines extortion in similar terms. Cal. Penal Code § 518(a). California law defines fear for purposes of extortion as induced "by a threat . . . [t]o expose, or to impute to him, her, or them a . . . disgrace." Cal. Penal Code § 519(3). The Supreme Court has reasoned that section 1951's term "wrongful" must be read as limiting "the statute's coverage to instances where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property." *United States v. Enmons*, 410 U.S. 396, 400 (1973) (holding that violence in the labor context is not wrongful for purposes of extortion if the laborers have a lawful right to demand bargained-for payment for requested labor).

To state a claim of economic extortion under both federal and California law, Jackson and Wilson must, therefore, "demonstrate either that [they] had a pre-

8

existing right to be free from the alleged threatened harm or that [LCA] had no right to seek payment for the service offered." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir. 2014). We observed in *Levitt* that the plaintiffs' case was more difficult because there was no allegation of a direct threat by Yelp!, so that plaintiffs had to allege sufficient facts to support the inference that Yelp! intended to induce the plaintiffs to pay them based on the use of threats or the exploitation of their fears. *Id.* We recognized that a "less stringent standard would transform a wide variety of legally acceptable business dealings into extortion." *Id.*

Wilson and Jackson have failed to offer a plausible allegation that LCA directly threatened to jail them if they failed to pay the agreed-upon amount for their electronic monitoring service. While Jackson and Wilson alleged direct threats in their complaint, they clarified the full context of their conversations with their respective LCA case workers during their depositions. Overall, there are two takeaways from their depositions. First is that Jackson and Wilson have a broad definition of "threat" and a low threshold for feeling threatened. Second is that Jackson and Wilson assumed many statements from their case workers were threats to send them to jail, particularly when the caseworkers used "have to" language. However, Jackson and Wilson acknowledged that these statements were often in conjunction with discussions about the potential consequences if they failed to pay and the subsequent process if the case worker filed a violation report with the court.

9

Wilson was also informed, and Jackson recognized, that LCA could only write a report to the court and the judge would ultimately decide whether they would return to jail.

Jackson and Wilson place great weight on our opinion in *United States v. Villalobos*, 748 F.3d 953, 956–57 (9th Cir. 2014), in which we adopted the First Circuit's means-ends framework. However, Wilson and Jackson gloss over *Villalobos*'s distinguishing facts. In *Villalobos*, the defendant threatened to break the law by impeding a government investigation in exchange for money, fraudulent tax receipts for donations, and a job or job recommendation for a third person. *Id.* at 957. In this case, LCA writing a report to the court was not a legal violation because California law requires LCA to write such a report. *See* Cal. Penal Code § 1208.2(h).

## IV.

In the end, the Appellants chose to enter into these payment agreements with LCA rather than serve jail time. LCA was, therefore, entitled to payment for the electronic monitoring services rendered. Furthermore, the warnings from LCA employees were not wrongful; the admonitions about potential jail time for noncompliance were within legal bounds. Wilson and Jackson also did not have a reasonable fear that LCA would send them back to jail as they knew LCA only had the power to report violations to the court. The LCA employees may have engaged

in "hard bargaining" techniques, but Wilson and Jackson have failed to present sufficient evidence of extortion.

**AFFIRMED**.