358 F.3d 616
 Christopher MILLER, Plaintiff-Appellant,
v.
YOKOHAMA TIRE CORPORATION, a California corporation; Stephen L. Kessing; James MacMaster; Rick Brennan; Philip L. Siracuse; Chikara
Cheech Yamauchi; Highway Performance Company, Limited, a California corporation, Defendants-Appellees.
 No. 02-56722.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 3, 2003 — Pasadena, California.
 Filed January 12, 2004.
 
 William L. Zeltonoga and Richard Ross, Los Angeles, CA, for the plaintiff-appellant.
 Don A. Proudfoot, Jr., James H. Broderick, Jr., and Benjamin E. Goldman, Squire, Sanders & Dempsey L.L.P., Los Angeles, CA, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California, John F. Walter, District Judge, Presiding. D.C. No. CV-02-02899-JFW.
 Before: BRIGHT,* O'SCANNLAIN, and McKEOWN, Circuit Judges.
 Opinion by Judge McKeown.
 OPINION
 McKEOWN, Circuit Judge.
 
 
 1
 This case involves an effort to transform a California state law wage and hour claim into a federal RICO claim under 18 U.S.C. § 1962(c) and (d). Christopher Miller alleges that he is a victim of a mail fraud scheme by Yokohama Tire Corporation and its managers, who misrepresented his entitlement to overtime pay and consequently underpaid him. The district court dismissed Miller's RICO claims under Federal Rule of Civil Procedure 12(b)(6), without leave to amend, and remanded to state court his remaining state law claims. Because Miller's complaint, as a matter of law, does not allege actionable fraud under the common law, we affirm. In affirming, we point out that Miller is not without a remedy in state court. We decline to expand RICO's reach to transform the federal courts into a general venue for ordinary state wage disputes.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Christopher Miller worked for Yokohama Tire Corporation ("Yokohama") from 1990 until his termination in 2001. Miller alleges that throughout his eleven years of employment he was ordered to work many overtime hours for which he was never paid additional compensation. Miller claims that Rick Brennan, Stephen Kessing, James MacMaster, and other high-ranking Yokohama employees (collectively "Yokohama Managers") falsely represented to him and other employees that they were not entitled to overtime pay because they were salaried. Finally, Miller alleges that Yokohama Managers made oral misrepresentations as to overtime entitlement to other employees, who were also victimized.
 
 
 3
 Miller is not an attorney; he was not familiar with the law or regulations concerning employee status and entitlement to overtime pay. Accordingly, he alleges that he trusted and placed confidence in his employer, who he argues had superior knowledge concerning his status and entitlement to overtime pay. In sum, Miller alleges that the misrepresentations and failure to pay overtime wages constitute a fraudulent scheme.
 
 
 4
 Miller further alleges that Yokohama mailed him and other employees their paychecks or pay stubs twice monthly and W-2s annually. For employees who opted for direct deposit, the same bi-monthly pattern occurred via wire transfers. Miller alleges that the scheme to deny overtime pay was furthered through these paycheck-related mailings and wire transfers.
 
 
 5
 Based on these predicate acts of mail and wire fraud, Miller alleges that Yokohama and the Yokohama Managers violated RICO, 18 U.S.C. § 1962(c), by conducting and operating the affairs of Yokohama through a fraudulent scheme to deny overtime pay to Miller and other employees. Miller also alleges that these parties conspired with each other to violate RICO, 18 U.S.C. § 1962(d).[1]
 
 
 6
 Miller filed his original complaint in Los Angeles Superior Court. The complaint contained twenty-two causes of action. All but the two RICO causes of action were state law claims.
 
 
 7
 Yokohama removed the case to the United States District Court for the Central District of California. The case was originally assigned to the Honorable Stephen V. Wilson. Once in federal court, Yokohama filed a Rule 12(b)(6) motion to dismiss Miller's RICO causes of action. In response, Miller filed his first amended complaint. Yokohama then filed a reply to the pending motion, addressing the minimal changes reflected in Miller's amended complaint. Yokohama also filed a second motion to dismiss directed to Miller's amended complaint. After Miller filed his amended complaint, Judge Wilson presided over a previously scheduled hearing on the original motion to dismiss and denied the motion as moot in light of the amended complaint.[2]
 
 
 8
 The case was then transferred to the Honorable John F. Walters, who took the pending motion on the amended complaint under submission. Judge Walters granted the motion to dismiss the RICO claims with prejudice, and without leave to amend, and remanded the remaining state law claims to the Los Angeles Superior Court. Miller now appeals the dismissal of his RICO claims.
 
 DISCUSSION
 
 9
 I. RICO CLAIMS AGAINST YOKOHAMA TIRE CORPORATION
 
 
 10
 We review de novo the district court's dismissal of Miller's RICO claims for failure to state a claim pursuant to Rule 12(b)(6). See Cervantes v. United States, 330 F.3d 1186, 1187 (9th Cir.2003). A complaint should not be dismissed, however, unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. No. 84 Employer-Teamster Joint Council v. Am. W. Holding Corp., 320 F.3d 920, 931(9th Cir.2003).
 
 
 11
 Miller names Yokohama as a defendant in his RICO action. Miller does not claim that Yokohama is directly liable, but rather premises Yokohama's liability on a respondeat superior theory. The threshold issue, therefore, is whether Yokohama can be vicariously liable for its employees' RICO violations. As a matter of established Ninth Circuit law, it cannot. In Brady v. Dairy Fresh Products Co., 974 F.2d 1149(9th Cir.1992), we held "that an employer that is benefited [sic] by its employee or agent's violations of section 1962(c) may be held liable under the doctrines of respondeat superior and agency when the employer is distinct from the enterprise." Id. at 1154 (emphasis added). Vicarious liability "is inappropriate when the [employer] is the RICO enterprise." Id. Miller names Yokohama as both the employer and the RICO enterprise. Because Yokohama cannot be held liable under the doctrine of respondeat superior, the district court's dismissal as to Yokohama was proper.
 
 II. RICO CLAIMS AGAINST YOKOHAMA MANAGERS
 
 12
 The district court's dismissal of Miller's remaining § 1962(c) and (d) RICO claims against the Yokohama Managers was also proper. Because he fails to properly allege any predicate acts of mail or wire fraud, Miller's complaint does not state any claim for which relief can be granted under RICO.
 
 
 13
 "Liability under § 1962(c) requires (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sun Sav. & Loan Ass'n v. Dierdorff, 825 F.2d 187, 191 (9th Cir.1987) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). "`Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any act `indictable' under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime." Schreiber Distrib. Co. v. ServWell Furniture Co., Inc., 806 F.2d 1393, 1399 (9th Cir.1986).
 
 
 14
 Because Miller's complaint satisfies the first three RICO elements of the "conduct of an enterprise through a pattern," we are left to analyze whether he has stated a claim of racketeering activity through mail fraud. Miller contends that every time the Yokohama Managers sent him or other employees a paycheck or W-2 amounted to a predicate act of mail or wire fraud.[3] He argues, that taken together, the thousands of mailings amounted to a pattern of racketeering activity.
 
 
 15
 To allege a violation of mail fraud under § 1341, "it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." Schreiber, 806 F.2d at 1400 (citations omitted). Miller alleges that the Yokohama Managers formed a scheme to defraud him and other Yokohama employees through misrepresenting the law, and furthered that scheme through the mailing of paychecks and W 2s. Miller's complaint falls short because it does not state actionable fraud.
 
 
 16
 The threshold issue we address is Miller's argument that an employer's misrepresentation of the law to an employee constitutes actionable fraud. In Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the Supreme Court underscored that the term "defraud" in the mail fraud statute is given its established common law meaning. Id. at 21-25, 119 S.Ct. 1827. As a result, we must look to common law to determine whether Miller has stated a claim of actionable fraud. See United States v. Kenrick, 221 F.3d 19, 28 (1st Cir.2000) (en banc) (referring to common law definitions of fraud and noting that the Neder Court relied on the Restatement for its definition of the materiality element of fraud). Under common law, Miller has failed to state a claim for actionable fraud.
 
 
 17
 "It is ... well settled, as a general rule, that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." Am.Jur.2d of Fraud and Deceit § 97 (2001). Statements of domestic law are normally regarded as expressions of opinion which are generally not actionable in fraud even if they are false. Id. The Yokohama Managers' statements did not include express or implied misrepresentations of fact. The Restatement explains that where a misrepresentation of law is only one of opinion, rather than one that includes a misrepresentation of fact, the recipient can only justifiably rely on it to the extent that he can justifiably rely on other opinions. Restatement (Second) of Torts § 545 (1977).
 
 
 18
 The general rule is not without exception. The Restatement lays out four special situations that would justify reliance on such a misrepresentation of law. See Id. Where the party making the misrepresentation 1) purports to have special knowledge; 2) stands in a fiduciary or similar relation of trust and confidence to the recipient; 3) has successfully endeavored to secure the confidence of the recipient; 4) or has some other special reason to expect that the recipient will rely on his opinion, misrepresentations of law may result in actionable fraud. Id. None of these circumstances apply to the present case.
 
 
 19
 The Yokohama Managers did not purport to have expert or superior knowledge. Miller cites two cases in support of his effort to come within the superior knowledge exception, but he fails to explain why his circumstance is analogous to either case. The first case, Seeger v. Odell, 18 Cal.2d 409, 115 P.2d 977(1941), involved the superior knowledge of an attorney vis-a-vis elderly laypersons. Id. at 979. The second case, Regus v. Schartkoff, 156 Cal. App.2d 382, 319 P.2d 721 (1957), involved an insurance adjuster's superior knowledge regarding an insurance claim. Id. at 724. Miller does not allege facts to support superior knowledge, nor are we willing to impute hypothetical knowledge on the basis of the facts alleged.
 
 
 20
 Nor does Miller's case involve a fiduciary duty or similar special relationship. "No presumption of a confidential relationship arises from the bare fact that parties to a contract are employer and employee; rather, additional ties must be brought out in order to create the presumption of a confidential relationship between the two." Odorizzi v. Bloomfield Sch. Dist., 246 Cal.App.2d 123, 54 Cal. Rptr. 533, 539 (Ct.App.1966); see also Bowman v. City of Indianapolis, 133 F.3d 513, 519(7th Cir.1998) (explaining that a relationship between city and its employees does not constitute a "confidential relationship" without more). In Slocomb v. City of Los Angeles, 197 Cal.App.2d 794, 17 Cal.Rptr. 529 (Ct.App.1961), the California Court of Appeal affirmed the dismissal of plaintiffs' claim that they were defrauded for nineteen years by their employer's misrepresentations of entitlement to overtime pay. Part of the reason the dismissal was affirmed was that the plaintiffs failed to allege that "any confidential relationship existed between the employers and the employees." Id. at 530-31, 532. Here, as in Slocomb, Miller does not plead any facts of additional ties between himself and the Yokohama Managers that would create a presumption of a confidential relationship.
 
 
 21
 The Yokohama Managers did not "endeavor[] to secure the confidence" of Miller. See Restatement (Second) of Torts § 542. The comment on Restatement (Second) of Torts § 542(c) explains that the rule is usually applicable to situations where "the maker gains the other's confidence by stressing their common membership in a religious denomination, fraternal order, or social group or the fact that they were born in the same locality." Id. at cmt. h. The only illustration of endeavoring to secure confidence the comment to the Restatement provides is a situation where after years of giving an elderly widow good investment advice, a "friend" advises her to buy worthless stock from him. Id. at cmt. h, illus. 2. The facts of the present case are nothing like the illustration in the Restatement. Miller alleges no facts indicating that the Yokohama managers endeavored to secure his confidence.
 
 
 22
 Finally, no other special reason supports an allegation that the Yokohama Managers would have expected Miller to rely on their opinion. There is no claim that Miller has a particular lack of intelligence or is particularly gullible, nor is there any allegation that the Yokohama Managers preyed on any such traits. See id. at cmt. I(explaining that the main application of the other special reason clause is "to cases in which the maker of the representation knows of some special characteristic of the recipient, such as lack of intelligence ... which gives the maker special reason to expect the opinion to be relied on"). Therefore, the final exception is not applicable to Miller.
 
 
 23
 Absent an exception — which is not present here — under common law, Miller's fraud claim cannot rest on the employee-employer relationship.
 
 
 24
 III. DENIAL OF LEAVE TO AMEND WITH NO WRITTEN FINDINGS
 
 
 25
 Miller also appeals the district court's denial of leave to amend his complaint and the court's lack of written findings supporting its denial. Where the plaintiff has previously filed an amended complaint, as Miller has done here, the district court's discretion to deny leave to amend is "particularly broad." Chodos v. W. Publ'g Co., 292 F.3d 992, 1003(9th Cir. 2002) (citation omitted).
 
 
 26
 In our view, Miller's complaint cannot be saved by any amendment. See Eminence Capital LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir.2003) (holding that dismissal without leave to amend is improper unless the complaint could not be saved by any amendment). Miller has not suggested an amendment that could provide additional facts that might establish a relationship with Yokohama Managers where he relied on their expert knowledge, and it is difficult to conceive of such an amendment. Accordingly, the district court did not abuse its discretion in denying leave to amend.
 
 
 27
 Relying on Mayes v. Leipziger, 729 F.2d 605(9th Cir.1984), Miller also argues that the district court abused its discretion by not providing written findings in support of its dismissal and denial of leave to amend. Mayes, however, stands in contrast to Miller's case. In Mayes, the plaintiff was never given her Rule 15 right to amend once as a matter of course and, significantly, the court acknowledged that an amendment could possibly correct the fatal defect in the complaint. 729 F.2d at 607, 608.
 
 
 28
 Mayes quotes Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Service Bureau, 701 F.2d 1276(9th Cir.1983), for its proposition that "where the record does not clearly dictate the district court's denial, we have been unwilling to affirm absent written findings ... and have reversed findings that were merely conclusory." Mayes, 729 F.2d at 608-609 (alteration in original). This is a correct statement as far as it goes, but it does not go far enough for Miller's claim because it is incomplete. The paragraph in Klamath that immediately follows this language is significant; the court continued, stating: "At the same time, futile amendments should not be permitted.... In this case, it is clear that Association's motion should be denied for this reason. The district court rejected the motion because it was untimely, and for `other reasons.' The most important `other reason' was futility." Klamath, 701 F.2d at 1293. We face the same circumstance here. An amendment would, as a matter of law, be futile and consequently the district court's lack of written findings was not an abuse of discretion.
 
 
 29
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 Section 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of ... [§ 1962]." Because we conclude that Miller fails to plead a proper RICO claim under § 1962(c), discussion of his conspiracy claim is unnecessary
 
 
 [2]
 In this hearing, Judge Wilson sternly cautioned Miller's attorney regarding the merit of Miller's RICO claims, stating: "I would encourage you based upon what I've heard to rethink your position and dismiss the RICO claim and go back to state court."
 
 
 [3]
 Because the elements of mail and wire fraud are virtually identical, and the separate treatment of each is unnecessary on the facts alleged, we combine our analysis of both types of predicate acts and refer to them singularly as mail fraudSee Schreiber, 806 F.2d at 1400(explicating the elements of mail and wire fraud).