**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Darra N. PANTHAKY, Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Wesley Sine, Defendant–Appellant.**

**Nos. 05–10569, 05–10575.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 2006.

Filed May 1, 2007.

See also, 483 F.3d 990.

John Kevin Vincent, Esq., USSAC—Office of the U.S. Attorney, Sacramento, CA, for Plaintiff–Appellee.

Matthew C. Bockmon, Esq., FPDCA—Federal Public Defender's Office, Sacramento, CA, Russell A. Cline, Esq., Crippen & Cline L.C., Salt Lake City, UT, for Defendant–Appellants.

---

\* The Honorable David G. Trager, Senior United States District Judge for the Eastern District of New York, sitting by designation.

Before: B. FLETCHER and BERZON, Circuit Judges, and TRAGER \*, District Judge.

## MEMORANDUM \*\*

Co-defendants Darra Panthaky and Wesley Sine appeal their convictions for mail fraud, 18 U.S.C. § 1341, committed in the course of operating a pyramid scheme. In a simultaneously filed published opinion we reject Sine's claims that the government's reference to certain evidence during the course of the trial dictates reversal. We reject both defendants' remaining claims of reversible error in this disposition.

## I.

The evidence of guilt was sufficient.

In reviewing a challenge to the sufficiency of the evidence, "we view the evidence in the light most favorable to the prosecution and determine whether any rational jury could have found Defendants guilty of each element of the crime beyond a reasonable doubt." *United States v. Ruiz,* 462 F.3d 1082, 1088 (9th Cir.2006).

**1. Good faith.** The government presented substantial evidence that tended to prove that neither defendant could have believed the trust had a legitimate ownership interest in the Ginnie Mae securities. The jury was entitled to credit that evidence over contrary evidence presented by the defendants. *See id.*

\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

■ **2. Proof of loss.** The fact that the defendants ultimately repaid the party whose mailings form the basis of the mail fraud does not matter. A mail fraud conviction does not require that the victim suffered an actual loss, as long as the scheme was meant to cause a loss. *United States v. Utz,* 886 F.2d 1148, 1150–51 (9th Cir.1989).

■ **3. Mistake of law.** Sine maintains that the government's evidence proved only that he made a misrepresentation of law by representing that various documents held by the trust were sufficient to establish ownership of the Ginnie Mae securities. A mail fraud conviction usually cannot be premised on misrepresentation of law, *Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 620–21 (9th Cir.2004), but that is not always true. Rather, there are "special situations that would justify reliance on such a misrepresentation of law," and that can therefore give rise to a mail fraud conviction. *Id.* at 621. As Sine's interactions with the victims of the fraud came in his capacity as a lawyer, this case involves at least one of those "special situations"—instances in which the party making the misrepresentation "purports to have special knowledge" of the law. *Id.; see also* RESTATEMENT (SECOND) OF TORTS § 545 cmt. d (1977) ("The layman may justifiably rely on the lawyer's opinion even though he knows the lawyer is representing a client whose interest is adverse to his own."). The government's evidence indicated that Sine knew of the falsity of his representations regarding the securities' validity and that he was not merely giving bad, but honest, advice. *Cf.* RE-STATEMENT (SECOND) OF TORTS § 545 cmt. d ("The layman may ... reasonably assume professional honesty.").

■ Moreover, the government's evidence about the Ginnie Mae securities was not limited to misrepresentations about the legal effect of the documents. The government also presented evidence that Sine misrepresented facts about the trust's ownership of the securities. Such misrepresentation of facts can form the basis of fraud even when intertwined with a misrepresentation of law. *Miller,* 358 F.3d at 621.

**4. The specific mailings.** Sine also argues that the government did not prove a sufficient connection between his participation in the scheme and the mailings covered by the indictment. To prove mail fraud, the government must show "1) existence of a scheme to defraud, and 2) using or causing the use of the mails in furtherance of the scheme." *United States v. Hubbard,* 96 F.3d 1223, 1227–28 (9th Cir. 1996). The defendant need not directly place items into the mail or order the mailing; instead, "if the defendant does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Id.* at 1229 (quoting *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954)) (internal quotation marks omitted). And "[a]lthough a mailing must occur in the execution of the scheme—that is, as a step in [the] plot—the mailing need not be an essential element of the scheme. Rather, it is sufficient if the mailing is *incident* to an essential part of the scheme." *United States v. Lo,* 231 F.3d 471, 478 (9th Cir.2000) (second alteration in original) (quoting *Schmuck v. United States,* 489 U.S. 705, 711, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); *Pereira,* 347 U.S. at 8, 74 S.Ct. 358) (citation and internal quotation marks omitted).

■ The evidence presented by the government met these requirements. Sine focuses on testimony by the parties to the

mailings that they first spoke with Sine in 2000, while the mailings occurred in April and May 1999. Other witnesses, however, testified about Sine's participation in Panthaky's overall scheme as early as the summer of 1998, and one of the government's exhibits at trial was a January 1999 facsimile exchange between Sine and one of the parties to the mailings. So there was evidence supporting the necessary findings that a scheme to defraud involving Sine existed at the time of the mailings. There was also evidence that the scheme encouraged the initial lenders to seek out additional individuals to lend money, thereby providing new infusions of funds that allowed the pyramid scheme to continue. Sufficient evidence therefore existed to support a finding that use of the mail was foreseeable and was related to an integral aspect of the fraudulent scheme.

## II.

As part of his defense that he held a good faith belief that the trust legitimately owned the Ginnie Mae securities, Sine drew attention to a signature guarantee made by a Maryland banker on an instrument that purported to transfer ownership of the securities to the trust, as well as to a 1992 telephone conversation Sine had with that banker. According to Sine, the signature guarantee, and the assurances the banker gave Sine during the telephone call, provided reasonable bases for Sine's belief in the legitimacy of the assignment of the securities.

█ Sine objects on appeal to a jury instruction that explained that a signature guarantee on an instrument assigning a Ginnie Mae security guaranteed merely that, *if the person signing was the registered owner of the securities*, the signer was an appropriate person to assign the security, that the signature was genuine, and that the signer had legal capacity to

sign. *See* MD.CODE ANN., COM. LAW § 8–312(2) (1991). The jury instruction made clear that the signature guarantee, under the governing law, did not purport to warrant that the signer was, in fact, the registered owner of the securities. *See id.* Sine objects that this instruction negated his defense that he reasonably relied on the signature guarantee to establish the validity of the securities. He also makes the somewhat confusing argument that this instruction took away from the jury the question of whether to credit his testimony that the Maryland banker, the guarantor of the signature on the assigning instrument, later assured Sine about the legitimacy of the transfer in a telephone call.

First, the jury instruction accurately reflected the law in effect at the time that the signature guarantee was made, *see id.*, and therefore properly was given to inform the jury of the legal effect of the signature guarantee. *Cf. United States v. Frega,* 179 F.3d 793, 806 n. 16 (9th Cir.1999) ("In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation.").

Second, we review jury instructions in light of "how they [would] reasonably be understood by the jury in the context of the whole trial," *United States v. Chen,* 933 F.2d 793, 796 (9th Cir.1991) (quoting *United States v. Mason,* 902 F.2d 1434, 1441 (9th Cir.1990)) (internal quotation mark omitted), giving deference to the district court as to the "precise formulation" of the instructions, *United States v. Knapp,* 120 F.3d 928, 930 (9th Cir.1997). Viewed in this light and given the reference to "on the [assignment] instruction" in the concluding sentence of the jury instruction, the jury would have understood the contested instruction as addressing only the effect of the guarantor's signature

on the guarantee, not on other action by the guarantor, such as a later telephone call. This conclusion is strengthened by the consideration that the jury instruction lacked any reference to the specific Maryland banker.

■ Relatedly, Sine complains that the district court failed to include the law of special signature guarantees in the jury instructions. *See* MD.CODE ANN., COM. LAW § 8–312(3). A defendant has the right to have the jury instructed on "his theory of defense, provided that it is supported by law and *has some foundation in the evidence.*" *United States v. Fejes*, 232 F.3d 696, 702 (9th Cir.2000) (emphasis added). The district court refused to give the special guarantee instruction because it believed none of the testimony supported the conclusion that the Maryland banker made a special, as opposed to a standard, guarantee. We agree. The testimony by a defense witness on the effect of the banker's signature guarantee did not depend on a special nature of the guarantee, but instead was premised on a (mistaken) view about the legal effect of *any* guarantee.

### III.

Sine was originally arraigned on an indictment that alleged seven fraudulent mailings. The superseding indictment dropped three of those mailings. Sine was never rearraigned on the superseding indictment, but the trial proceeded on that indictment.

■ This procedural lapse is not reversible error. "Vacating convictions for lack of formal arraignment proceedings is predicated on the existence of possible prejudice. What is necessary is that defendant know what he is accused of and be able adequately to defend himself." *United States v. Romero*, 640 F.2d 1014, 1015 (9th Cir.1981) (quoting *United States v. Rogers*, 469 F.2d 1317–18 (5th Cir.1972)) (citations and internal quotation marks omitted). Sine cannot demonstrate prejudice from the failure to rearraign him. The superseding indictment *narrowed*, rather than broadened, the allegation contained in the original indictment, so he had notice of and was arraigned on every allegation on which he was tried. So no relief is appropriate on this ground.

### IV.

■ Sine also objects to the district court's decision to excuse certain jurors. Contrary to the court's instructions at the beginning of the trial, some jurors removed their own trial notes from the courtroom. The judge interviewed the seven jurors who admitted to removing their notes. During these interviews, two jurors reported they had reviewed or organized their notes at home, while the remaining five said they never looked at their notes outside the courtroom. Concerned that their actions might lead them to give undue influence to their notes and effectively caused them to begin deliberations before the rest of the jury, the court dismissed the two jurors; the other five jurors remained.

"Due deference must be accorded the trial judge's firsthand exposure to the jurors and to the impact of their conduct on the trial." *United States v. Gay*, 967 F.2d 322, 324 (9th Cir.1992) (quoting *United States v. Perez*, 658 F.2d 654, 663 (9th Cir.1981)) (citations and internal quotation marks omitted). Here, the district court used a reasoned basis to determine which jurors engaged in misconduct and to choose how to remedy the misconduct, so we defer to its decision. Moreover, Sine has not demonstrated prejudice from any erroneous juror dismissal. *See United States v. Alexander*, 48 F.3d 1477, 1485 (9th Cir.1995) (requiring that where a ju-

ror is erroneously dismissed, the party arguing for reversal prove prejudice). Sine does not suggest any such prejudice, and we cannot perceive any.

## V.

The district court treated the Sentencing Guidelines as advisory, as required by *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). There was, therefore, no Sixth Amendment violation in relying on sentencing facts not found by the jury. *Id.* at 245, 125 S.Ct. 738. Nor was there a Sixth Amendment violation in determining the amount lost by the victims for purposes of the restitution order. *See United States v. Bussell*, 414 F.3d 1048, 1060 (9th Cir.2005) (holding that the Sixth Amendment does not require factfinding by a jury for purposes of calculating the amount of restitution).

## VI.

Sine argues that he received ineffective assistance of counsel at trial. As our simultaneously filed published opinion recounts, trial counsel did fail to make objections to a quite erroneous and extensive line of questioning by the government. We do not, however, ordinarily review ineffective assistance claims on direct appeal. Instead, we require federal defendants to bring such claims in post-conviction proceedings pursuant to 28 U.S.C. § 2255, so as to permit development of a record concerning the counsel's reasoning for his decisions at trial. *See United States v. McKenna*, 327 F.3d 830, 845 (9th Cir.2003). Such procedure is particularly warranted in this case, as the dueling unsubstantiated explanations by the government and the defendant for the decisions

made at trial demonstrate further development of the record is essential.

**AFFIRMED.**