**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. CC-16-1381-KuFTa |
| MARDIROS HAIG MIHRANIAN, | Bk. No. 2:13-bk-39026-BR |
| Debtor. | Adv. No. 2:15-ap-01668-BR |
| SAM S. LESLIE, Chapter 7 Trustee, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| HAIG LEO MIHRANIAN, | |
| Appellee. | |

Argued and Submitted on May 18, 2017
at Pasadena, California

Filed – June 26, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances: Robert Michael Aronson, on brief, for appellant; David B. Golubchik of Levene, Neale, Bender, Yoo & Brill LLP argued for appellee.

Before: KURTZ, FARIS and TAYLOR, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Chapter 7[1] trustee Sam S. Leslie appeals from an order dismissing with prejudice his third amended fraudulent transfer complaint against Haig Leo Mihranian - one of the debtor's sons.

The central issue in this appeal is whether Leslie adequately alleged that the debtor Mardiros Haig Mihranian had an interest in the funds allegedly transferred to his son Haig. Unless Leslie alleged sufficient facts that, when taken as true, plausibly demonstrated Mihranian's interest in the transferred funds, Leslie failed to state a claim for relief under either § 544 or § 548.

We agree with the bankruptcy court that Leslie did not allege sufficient facts regarding Mihranian's interest in those funds. The general "story" in Leslie's complaint informs us that Mihranian (and his now ex-wife Susan) diverted funds from Mihranian's wholly-owned incorporated medical practice to the defendants. Leslie has never posited – in the bankruptcy court or on appeal – any viable legal theory why funds diverted from Mihranian's incorporated medical practice plausibly could be identified as belonging to him as opposed to his corporation.

We also agree with the bankruptcy court's decision to dismiss the third amended complaint with prejudice. In total, Leslie availed himself of four attempts – four opportunities – to state adequate fraudulent transfer claims. In addition, Leslie

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

has admitted that he conducted extensive pre-adversary-proceeding discovery under Rule 2004, which discovery included both depositions and document requests, and has not disputed that he hired professionals who (among other things) were assigned the task of identifying the source of transferred funds. Yet, in all of the versions of his complaint, Leslie never stated a coherent set of facts plausibly identifying Mihranian's pre-transfer interest in the alleged fraudulently transferred funds. Under these circumstances, the bankruptcy court did not err in concluding that Leslie could not or would not plausibly identify Mihranian's pre-transfer interest in the subject funds, and thus the court did not abuse its discretion in dismissing the third amended complaint without leave to amend.

Accordingly, we AFFIRM.

## FACTS

Leslie's adversary proceeding sought to avoid and recover alleged fraudulent transfers under federal and California law based on §§ 544 and 548 and Cal. Civ. Code §§ 3439.04 and 3439.05. This is one of four similarly-pled adversary proceedings. The bankruptcy court dismissed all four with prejudice, and all four are on appeal on identical grounds. Each complaint names a different individual defendant who allegedly received a different series of fraudulently-transferred funds.

The history of complaints and responses informs our analysis. Leslie filed his first amended complaint against Haig, without any prompting from the bankruptcy court, within several weeks of the commencement of the adversary proceeding. Haig responded to the first amended complaint by filing a Civil

3

Rule 12(b)(6) motion to dismiss. Haig pointed out that Leslie's fraudulent transfer allegations did little more than state in conclusory fashion the elements for fraudulent transfer claims and did nothing to advise Haig of the specific transactions Leslie claimed constituted fraudulent transfers.

The bankruptcy court in large part granted the motion to dismiss. The bankruptcy court dismissed without prejudice Leslie's fourth claim for relief seeking an accounting and fifth claim for relief seeking disallowance of any proof of claim filed by Haig. The bankruptcy court also dismissed without prejudice Leslie's first and second claims for relief to the extent they alleged actual fraudulent transfers. To the extent the first and second claims for relief alleged constructive fraudulent transfers, the bankruptcy court's order on the motion to dismiss merely required more specificity, as follows:

> On the first and second causes of action in the Complaint for constructive fraud, the claims shall be amended to be pled with more specificity, including, without limitation, the source of the alleged transfer(s), the identity of the alleged transferor(s), the date(s) of the alleged transfer(s), and the amount of the respective transfer(s) . . . .

Order re Motion to Dismiss (Apr. 14, 2016) at p. 2. We do not know the reasons the bankruptcy court offered for its ruling because neither party provided us with the transcript of the March 29, 2016 hearing on the motion to dismiss.[2]

---

[2]Haig's motion did not address Leslie's third claim for relief seeking to recover the alleged fraudulent transfers for the benefit of the estate under §§ 550 and 551. Nor did the bankruptcy court's April 14, 2016 order. On its face, this claim for recovery of avoided transfers has no independent effect in

(continued...)

4

Leslie's second amended complaint contained more detail. It alleged that Mihranian and his spouse Susan[3] engaged in a scheme to divert earnings from their shared medical practice to the various third-party defendants – including Haig – for the purpose of keeping their earnings away from their judgment creditors, two of whom are specifically identified in the complaint.

On one hand, the second amended complaint alleged that Mihranian and Susan practiced medicine through a California professional medical corporation known as Medical Clinic & Surgical Specialties of Glendale, Inc. ("MCSSG"). On the other hand, the complaint perhaps suggested that Mihranian and Susan sometimes provided medical services on their own account and not through MCSSG. The second amended complaint did not specify which funds transferred originally were payments for services provided through MCSSG and which (if any) were payments for services provided by the two doctors individually.

The second amended complaint then sets forth several paragraphs of allegations stating that some $2 million in

[2](...continued)
the absence of a viable claim to avoid the transfers.

[3]Haig asserts that Mihranian and Susan separated in 1998, divorced in 2015, and did not accrue any community property after the 1998 separation date pursuant to Cal. Fam. Code § 771(a). Leslie alleged that Mihranian and Susan did not really separate in 1998, that the couple continued to work together and live together after 1998, and that the couple only feigned separation for the purpose of furthering their scheme to keep Mihranian's assets away from his creditors. The bankruptcy court ultimately ruled that Leslie had alleged sufficient facts challenging the purported separation, and Haig did not cross-appeal this ruling. We further discuss the issue concerning the couple's marital status near the end of this decision.

payments for the two doctors' medical services were shuttled back and forth between Susan and Haig. However, none of these allegations clarify who held the medical service payments before Susan began shuttling them back and forth, nor do they clarify who "owned" the right to the payments at the time the medical services were paid for.

The second amended complaint then, in conclusory fashion, identifies $2.7 million as money "debtor" allegedly transferred to Haig. But it is impossible to tell from the complaint what portion of this amount originally was payment for services provided through MCSSG and what portion of this amount (if any) originally was payment for services provided by the two doctors individually – or who held these funds before they allegedly were transferred to Haig.

After he received the second amended complaint, Haig contacted Leslie and urged Leslie to provide more specificity regarding the alleged fraudulent transfers. Haig pointed out that the second amended complaint did not specify "the source of the alleged transfer(s), the identity of the alleged transferor(s), the date(s) of the alleged transfer(s), and the amount of the respective transfer(s)" as directed in the bankruptcy court's April 14, 2016 order. In response, Leslie filed his third amended complaint.

There were only two significant differences between the second amended complaint and the third amended complaint. Most notably, the third amended complaint added two exhibits providing some detailed information regarding each of the alleged fraudulent transfers. Exhibit A was entitled "Detail Of 544

6

Transfers" and itemized in two columns the "Date" of each alleged transfer and the "Deposit" amount of each alleged transfer. Exhibit A did not identify the source of each alleged transfer or the identity of the alleged transferor. Nor is there any way to tell who provided the services generating these funds. Furthermore, Leslie's third amended complaint never explained the relationship or connection (if any) between the $2 million in transfers identified in Exhibit A and the $2 million in funds allegedly shuttled back and forth between Susan and Haig.

Exhibit B was entitled "Detail Of 548 Transfers" and set forth specific information regarding dates and deposit amounts in the same format as Exhibit A.[4]

The other significant change between the second amended complaint and the third amended complaint concerned the aggregate amount of fraudulent transfers alleged. Whereas the second amended complaint alleged an aggregrate amount of roughly $2.7 million in alleged fraudulent transfers to Haig, the third amended complaint only alleged an aggregate amount of roughly $2 million in such transfers.

Haig moved to dismiss the third amended complaint. Haig asserted that the third amended complaint did not satisfy the specificity requirement of the bankruptcy court's April 14, 2016 order and also did not satisfy the requirements for pleading claims for relief under Civil Rules 8(a) and 9(b), Ashcroft v.

---

[4]Haig argued that Exhibits A and B incorrectly identified the "deposit" dates instead of the transfer dates, but this argument reads the Exhibits in an overly narrow manner. In any event, the bankruptcy court did not adopt this argument when it dismissed Leslie's third amended complaint.

7

*Iqbal*, 556 U.S. 662 (2009), and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).

At the hearing on the motion to dismiss the third amended complaint, the bankruptcy court primarily focused on one issue. According to the court, it directed Leslie both at the March 29, 2016 dismissal motion hearing and in its April 14, 2016 order to specifically identify the transferor of each transfer. The court explained that it made a big difference whether the source of the fraudulently transferred funds was Mihranian, his former wife Susan, MCSSG, or some other person or entity. The following statement is representative of the court's comments:

> I was very specific last time we were here. I wanted you to be specific. Now who actually physically made the transfer at that moment? Was it the Debtor, was it the ex-wife? And that was -- was that -- did you not understand that that was the whole purpose of my order?

Hr'g Tr. (Sept. 27, 2016) 10:24-11:3.

Similarly, the court later on made it clear that it was dismissing the third amended complaint because Leslie did not provide the specific information regarding who was the transferor:

> THE COURT: But the difference is I have ordered you twice, I think,[5] to be more specific as to the Debtor, the ex-wife, now ex-wife, the business. I ordered you, and you didn't do it. I can't figure out why, but you didn't do it.
>
> MR. ARONSON: Your Honor, I thought that I complied with the Court's order.
>
> THE COURT: You're a bright guy. Good lord. I can't imagine that you actually -- if you did, it's tunnel

---

[5]The record reflects that the court only issued one order requiring Leslie to provide more specific information regarding the alleged fraudulent transfers – the April 14, 2016 order.

8

vision, and you really should have asked somebody else.

I am going to grant the motion. This is, you know, you -- I made it absolutely clear. You didn't do it. And I am going to dismiss it.

Hr'g Tr. (Sept. 27, 2016) 30:24-31:11.

On October 14, 2016, the bankruptcy court entered its order dismissing with prejudice Leslie's third amended complaint, and Leslie timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157, and we have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court commit reversible error when it dismissed Leslie's third amended complaint without leave to amend?

**STANDARDS OF REVIEW**

We review de novo orders dismissing complaints for failure to state a claim. See Levitt v. Yelp! Inc., 765 F.3d 1123, 1126 (9th Cir. 2014).

Denial of leave to amend is reviewed for an abuse of discretion. See Gonzalez v. Planned Parenthood of L.A., 759 F.3d 1112, 1114 (9th Cir. 2014).

The bankruptcy court abuses its discretion if it applies an incorrect legal standard or its findings of fact are clearly erroneous. Fear v. U.S. Tr. (In re Ruiz), 541 B.R. 892, 896 (9th Cir. BAP 2015).

**DISCUSSION**

Leslie contends that the bankruptcy court erred in several different ways when it dismissed his third amended complaint with

9

prejudice. Leslie asserts that the bankruptcy court erroneously determined that the third amended complaint did not satisfy the requirements of Civil Rules 8(a) and 9(b). Leslie further maintains that the bankruptcy court erroneously required greater specificity regarding each of the alleged fraudulent transfers than either of those Civil Rules require. Leslie also contends that the bankruptcy court erroneously denied him leave to amend. We will address each of these asserted errors in turn.[6]

As a threshold matter, it is important to note Leslie based all of his fraudulent transfer claims on the theory that Mihranian and his then-wife Susan improperly diverted funds from the couple's shared medical practice. (3rd Am. Compl. at ¶¶ 7, 14, 18.) That is what Leslie said in his third amended complaint, and that is what Leslie repeatedly said in his opening appellate brief. (Aplt. Opn. Br. at pp. 10-11, 26-28.) Leslie has not advanced on appeal any alternate theories or arguments underlying his fraudulent transfer claims, and we decline to look beyond what Leslie actually has argued. See Christian Legal Soc'y v. Wu, 626 F.3d 483, 487–88 (9th Cir. 2010) (declining to address matters not specifically and distinctly discussed in the appellant's opening brief); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) (same). With this limitation on our review in mind, we will turn our attention to

---

[6]In his opening appellate brief, Leslie purported to identify an additional argument challenging the bankruptcy court's decision: that the bankruptcy erred in determining that his third amended complaint did not satisfy the bankruptcy court's heightened specificity requirements. Our discussion of the first two arguments set forth above addresses and disposes of this additional argument.

10

the so-called errors Leslie has attributed to the bankruptcy court's decision.

**A.    Civil Rule 8(a) and Civil Rule 9(b) Pleading Requirements**

Civil Rule 8(a) requires pleadings to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  A claim is the "aggregate of operative facts which give rise to a right enforceable in the courts."  <u>Bautista v. Los Angeles Cty.</u>, 216 F.3d 837, 840 (9th Cir. 2000) (citing <u>Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.</u>, 133 F.2d 187, 189 (2d Cir. 1943)).

As the Supreme Court has explained:

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

<u>Iqbal</u>, 556 U.S. at 678 (citations and internal quotation marks omitted).  The Ninth Circuit Court of Appeals has observed that the Supreme Court has not always applied this plausibility standard consistently.  <u>Starr v. Baca</u>, 652 F.3d 1202, 1215–16 (9th Cir. 2011).  In light of this perceived inconsistency, the Ninth Circuit has refined the standard for determining when a complaint meets the minimum requirements of Civil Rule 8(a), stating as follows:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, **the factual allegations that are taken as true must plausibly**

11

**suggest an entitlement to relief**, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Id. at 1216 (emphasis added). Accord, Merritt v. Countrywide Fin. Corp., 759 F.3d 1023, 1032-33 (9th Cir. 2014). At bottom, the plausibility analysis is context specific and requires the court to draw upon its experience and common sense. Levitt, 765 F.3d at 1135.

One of the fraudulent transfer elements Leslie needed to allege was that property of the debtor was transferred to the defendants. A transfer of the **debtor's** property that otherwise would have been property of the estate is a prerequisite for a fraudulent transfer action under either § 544 or § 548. See Geltzer v. Barish (In re Starr), 502 B.R. 760, 767-68 (Bankr. S.D.N.Y. 2013) (holding that trustee sufficiently alleged debtor's property interest); Serra v. Salven, 2011 WL 4627576, at *12 (E.D. Cal. Oct. 3, 2011) (holding that trustee failed to prove for summary judgment purposes that debtor had an interest in the property transferred); see also Gaughan v. Edward Dittlof Revocable Tr. (In re Costas), 555 F.3d 790, 792-93 (9th Cir. 2009) (generally stating property interest requirement); Wyle v. Rider (In re United Energy Corp.), 944 F.2d 589, 593-94 (9th Cir. 1991) (same); Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison LLP), 408 B.R. 318, 337 (Bankr. N.D. Cal. 2009) ("both the 'property' and 'transfer' elements apply whether the claim is one for actual or constructive fraudulent transfer").

Leslie alleged that Mihranian and his then-wife Susan diverted to third parties payments for medical services they

12

provided. If the allegedly diverted medical service fees were owed either to Mihranian or his alleged wife, then Mihranian transferred his interest in those payments by diverting them. See In re Brobeck, Phleger & Harrison LLP, 408 B.R. at 338 (holding that debtor law firm's waiver of potential profits from unfinished legal work constituted a transfer of the law firm's property within meaning of fraudulent transfer statutes).

However, Leslie also alleged that Mihranian and Susan operated through a shared medical practice – an incorporated medical practice – MCSSG. There are no facts alleged in the complaint from which it would be plausible to infer that the fees for services earned by the medical practice would belong to either Mihranian or Susan individually; rather, they would be property of MCSSG. To hold otherwise would ignore the legal separateness of MCSSG. See generally Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 538 (2000) ("a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations.").

Leslie argues on appeal that any fees for services owed to MCSSG actually were owed to Mihranian – MCSSG's sole owner – and that he alleged sufficient facts in his third amended complaint to justify piercing the corporate veil. The bankruptcy court disagreed with Leslie's alter ego argument, and this alter ego argument is the only ground Leslie has advanced in the bankruptcy court or on appeal to explain why MCSSG's funds should be treated as if they were Mihranian's property.

Generally, to pierce the corporate veil, a plaintiff must

13

allege and prove: (1) "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist"; and (2) "if the acts are treated as those of the corporation alone, an inequitable result will follow." Mesler v. Bragg Mgmt. Co., 39 Cal. 3d 290, 300 (1985). There is no single set of underlying facts that always must be alleged to plausibly demonstrate these two criteria; instead, a variety of case-specific facts must be considered to establish the principal's domination and control over the corporation and to show that immunizing the principal from the corporation's liability would work an injustice. Id.; see also Lebastchi v. Superior Court, 33 Cal. App. 4th 1465, 1470 (1995).

Alter ego has been described as "an extreme remedy, sparingly used," Sonora Diamond Corp., 83 Cal. App. 4th at 539, and it is to be imposed "cautiously" and "reluctantly." Highland Springs Conference & Training Ctr. v. City of Banning, 244 Cal. App. 4th 267, 281 (2016). More importantly, when imposed, the separateness of the corporate entity is not disregarded for all purposes but only for the purpose and under the circumstances of the case in which it is asserted. Lebastchi, 33 Cal. App. 4th at 1470; see also Mesler, 39 Cal. 3d at 301 ("under certain circumstances a hole will be drilled in the wall of limited liability erected by the corporate form; for all purposes other than that for which the hole was drilled, the wall still stands").

Ordinarily, the alter ego doctrine only is invoked to enable a plaintiff to impose corporate liability upon the corporation's principal(s). See Sonora Diamond Corp., 83 Cal. App. 4th at 538.

14

In fact, at least one California Court of Appeal has held that California law does not permit "outside reverse piercing of the corporate veil" – piercing in order to make the corporation's assets liable for the debts of the individual shareholder(s). Postal Instant Press, Inc. v. Kaswa Corp. 162 Cal. App. 4th 1510, 1522 (2008). That is precisely what Leslie is attempting to do here: claim the assets of MCSSG as if they belonged to Mihranian individually and his bankruptcy estate.

Postal Instant Press is carefully reasoned and persuasive. Moreover, we must follow the law of California's intermediate appellate courts on this point unless we are convinced that the California Supreme Court would decide the issue differently. Goodrich v. Briones (In re Schwarzkopf), 626 F.3d 1032, 1038 (9th Cir. 2010). We are not persuaded that the California Supreme Court would decide this issue differently. Thus, allegations of alter ego do not aid Leslie; he cannot establish plausibility through such allegations. Consistent with this fact, Leslie did not adequately plead alter ego.

As mentioned above, alter ego is the only legal ground Leslie has advanced to explain why fees for medical services belonging to MCSSG should have been considered Mihranian's property for fraudulent transfer purposes. To the extent Leslie could have advanced other grounds to support this contention, Leslie abandoned them by not raising them in the bankruptcy court or on appeal. See, e.g., United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 n.9 (2010) ("We need not settle that question, however, because the parties did not raise it in the courts below"); Mayor v. Wolkowitz (In re Cinevision Int'l,

15

Inc.), 2016 WL 638729, *7-8 (Mem. Dec.) (9th Cir. BAP Feb. 16, 2016) (declining to consider issue that appellants raised for the first time in their reply brief on appeal).

In short, fees for medical services owed to MCSSG did not belong to Mihranian – and were not his property – for fraudulent transfer purposes.

Leslie's third amended complaint arguably suggested that, at least some of the time, Mihranian and Susan accrued earnings on their own account. But no factual allegations in the third amended complaint tie these accrued earnings (if any) to the specific alleged fraudulent transfers identified in the complaint. The bankruptcy court attempted to explain to Leslie that the complaint should have identified the alleged source of all fraudulent transfers. Given the other facts Leslie alleged regarding the corporate status of Mihranian's and Susan's medical practice, we agree with the bankruptcy court and hold that Leslie did not state plausible fraudulent transfer claims in the absence of alleged facts plausibly demonstrating that either Mihranian or Susan had a property interest in the specific funds allegedly transferred.

In sum, under Civil Rule 8(a), Leslie needed to allege facts which, if accepted as true, plausibly could have lead to the following inferences: (1) that **the funds transferred to Haig** were funds in which Mihranian personally had a property interest before they were transferred to Haig; and (2) that Mihranian relinquished to Haig his property interest in those funds by way of those transfers. Leslie did not allege facts that plausibly could support these inferences. Accordingly, the third amended

16

complaint failed to state any viable fraudulent transfer claims.

Meanwhile, Civil Rule 9(b) requires fraud to be pled with particularity. Under Civil Rule 9(b), the plaintiff's allegations must include "'the who, what, when, where, and how of the misconduct charged.'" United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

A number of bankruptcy courts have acknowledged that Civil Rule 9(b) does not apply to constructive fraudulent transfers. See, e.g., Seror v. Stone (In re Automated Fin. Corp.), 2011 WL 10502417, at *4-5 (Bankr. C.D. Cal. Jan. 25, 2011); Angell v. Day (In re Caremerica, Inc.), 415 B.R. 200, 208 (Bankr. E.D.N.C. 2009); Official Comm. of Unsecured Creditors. v. Am. Tower Corp. (In re Verestar, Inc.), 343 B.R. 444, 459-60 (Bankr. S.D.N.Y. 2006)); see also Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd., 2008 WL 4450328, at *8-9 (N.D. Cal. Sept. 29, 2008)(district court ruling holding same). These same decisions hold, however, that Civil Rule 9(b) applies to actual fraudulent transfers because such claims sound in fraud. We question whether all actual fraudulent transfer claims sound in fraud, because the controlling fraudulent transfer statutes state in the disjunctive that an actual fraudulent transfer occurs when the debtor makes a transfer with the actual intent to hinder, delay **or** defraud. See § 548(a)(1)(A); Cal. Civ. Code § 3439.04; see also Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 232 (9th Cir. BAP 2007), aff'd in part and adopted, 551 F.3d 1092 (9th Cir. 2008). We do not see why harboring an intent to hinder or

17

delay your creditors would sound in fraud.

That being said, it is unnecessary for us to resolve the issue of when, if ever, Civil Rule 9(b) should be applied to actual fraudulent transfer claims. As a practical matter, under the circumstances of this particular case, what Civil Rule 8(a) requires and what Civil Rule 9(b) would require largely overlap. Put another way, in this instance, the Civil Rule 8(a) standard articulated in Merritt, 759 F.3d at 1033, and the Civil Rule 9(b) standard articulated in United Healthcare Insurance Co., 848 F.3d at 1180, lead to similar pleading requirements.

In any event, we already have held that none of the fraudulent transfer claims satisfy the Civil Rule 8(a) standard. Thus, it is unnecessary to determine here whether Civil Rule 9(b) also applies and has been satisfied.

**B.    The Bankruptcy Court's Requirement That Leslie Plead His Fraudulent Transfer Claims With Greater Specificity**

Leslie's next contention concerns the bankruptcy court's April 14, 2016 order and its direction that Leslie must re-plead his constructive fraudulent transfer claims with more specificity, "including, without limitation, the source of the alleged transfer(s), the identity of the alleged transferor(s), the date(s) of the alleged transfer(s), and the amount of the respective transfer(s)."

The April 14, 2016 order only stated this requirement as to the constructive fraudulent transfer claims. Even so, when the order is read in conjunction with the court's comments at the final hearing, it becomes reasonably clear that, when the court's April 14, 2016 order dismissed without prejudice Leslie's actual

18

fraudulent transfer claims, the court expected any re-pleading of the actual fraudulent transfer claims to include at least the same level of specificity as the constructive fraudulent transfer claims. Neither party has suggested any other interpretation of the court's April 14, 2016 order, nor has Leslie argued that he did not realize that the bankruptcy court's specificity requirement applied to both the actual fraudulent transfer claims and the constructive fraudulent transfer claims.

As we have already explained, the third amended complaint did not allege sufficient facts to support a plausible inference that Mihranian transferred any of his own property interests to Haig. The bankruptcy court's required statement of transfers identifying (among other things) the source of each transfer reasonably was aimed at rectifying this deficiency. Typically, identifying the source of the transfer(s) and the identity of the transferor(s) would provide facts from which a court plausibly could infer whether the debtor held a property interest in funds before their transfer. See, e.g., In re Geltzer, 502 B.R. at 767–68; In re Caremerica, Inc., 415 B.R. at 208.

We acknowledge that Leslie might have employed other methods besides the bankruptcy court's specificity requirement to satisfy the pleading requirements of Civil Rule 8(a) for purposes of alleging Mihranian's interest in the alleged fraudulently transferred funds. Even so, Leslie did not in fact plausibly allege Mihranian's interest in the transferred funds in any way, and the bankruptcy court's specificity requirement reasonably was aimed at rectifying this deficiency in Leslie's pleading. Therefore, we conclude that the bankruptcy court did not commit

19

reversible err when it imposed the specificity requirement on Leslie in the April 14, 2016 order.

**C.    Dismissal Without Leave To Amend**

Leslie also contends on appeal that the bankruptcy court should have granted him leave to amend his complaint. Generally speaking, courts should not deny leave to amend unless the court determines that amendment would be futile. See Ebner v. Fresh, Inc., 838 F.3d 958, 963 (9th Cir. 2016); Lacey v. Maricopa Cty., 693 F.3d 896, 926 (9th Cir. 2012) (en banc).[7]

That being said, the trial court has broad discretion in deciding whether to grant leave to amend, especially when (as here) the plaintiff already has been given multiple opportunities to amend its complaint. See Gonzalez, 759 F.3d at 1116 (citing Miller v. Yokohama Tire Corp., 358 F.3d 616, 622 (9th Cir. 2004)). Gonzalez is instructive. There, the Ninth Circuit Court of Appeals affirmed the district court's dismissal of Gonzalez's third amended complaint without leave to amend. Id. In the process of holding that the district court did not abuse its discretion in denying leave to amend, the Court of Appeals relied on two things: (1) Gonzalez's failed multiple attempts to state viable claims for relief; and (2) the fact that certain

---

[7]To be clear, different standards (other than futility) apply when the bankruptcy court dismisses with prejudice an adversary proceeding as a sanction based on plaintiff's noncompliant or dilatory conduct. See generally Lee v. Roessler-Lobert (In re Roessler-Lobert), 567 B.R. 560, 568-73 (9th Cir. BAP 2017) (describing other standards). Here, however, Haig did not request dismissal of Leslie's complaint as a sanction, nor did the bankruptcy court consider sanctions as a ground for dismissal without leave to amend.

attachments to Gonzalez's complaint "defeated the plausibility of his allegations." Id.

Similarly, here, Leslie's focus in his complaint on the alleged diversion of funds from an incorporated medical practice undermined the plausibility of his allegations that Mihranian had a property interest in the alleged fraudulently transferred funds.

Furthermore, Leslie, like Gonzalez, had a history of multiple failed attempts to state viable claims for relief. Leslie's third amended complaint was his fourth attempt to state his fraudulent transfer claims. Leslie has not disputed that he filed his first amended complaint and his third amended complaint after discussions with the defendants regarding the insufficiency of his fraudulent transfer allegations. Additionally, the bankruptcy court reviewed two of Leslie's four complaints, and the court correctly determined that neither stated plausible fraudulent transfer claims. After the first of the bankruptcy court's two reviews, the court ordered Leslie to allege more specific facts regarding the subject transfers, which order reasonably was aimed at identifying whether Mihranian plausibly had an interest in the alleged fraudulently transferred funds. Nonetheless, Leslie did not comply with the court's order, nor did Leslie otherwise adequately address the court's concern regarding identification of Mihranian's interest in the transferred funds.

Leslie's failure to do so is particularly inexplicable here because he admitted to conducting extensive pre-litigation discovery in the form of Rule 2004 examinations – consisting of

21

both depositions and voluminous document production requests – focusing on the transfers in question.  Nor has Leslie disputed Haig's assertion that Leslie hired professionals who (among other things) were assigned the task of identifying the source of the transferred funds.  Simply put, this is not a situation where the plaintiff lacked an opportunity to obtain sufficient information to plead his claims with more specificity.

Under these circumstances, the bankruptcy court did not err when it determined that Leslie either could not or would not plausibly allege Mihranian's interest in the transferred funds.  Accordingly, dismissal without leave to amend was not an abuse of discretion.

**D.   Other Issues: Community Property, Statute of Limitations and Request to Supplement The Record**

There are a few additional issues we should address.  First, Haig claims that Leslie did not sufficiently allege Mihranian's community interest in any funds Susan received on account of medical services Susan provided on her own account.  To the extent Mihranian had a community interest in funds in which Susan held a right to payment, the receipt of those funds by Haig could have constituted a transfer of the debtor's interest in property for fraudulent transfer purposes.  See In re Beverly, 374 B.R. at 233.

Ultimately, the bankruptcy court seemed to decide this issue in favor of Leslie, and Haig did not cross-appeal from this ruling.  Regardless, under California law, whether Mihranian and Susan actually were separated in and after 1998 as Haig claims was a question of fact necessary to determine whether and when

22

they ceased to accrue community property under Cal. Fam. Code § 771(a). See In re Marriage of Manfer, 144 Cal. App. 4th 925, 930 (2006). Leslie effectively alleged that Mihranian and Susan continued to work together, that they continued to live together in the same residence, and that neither intended a permanent and final cessation of their marriage; rather, according to Leslie, the couple feigned separation in 1998 as part of a scheme to keep Mihranian's assets away from his creditors. These facts were sufficient to allege that Mihranian and Susan were not, in fact, separated and continued to accrue community property in and after 1998. See generally id.

Even so, under the circumstances of this appeal, the issue of whether the fees for services were Susan's property or Mihranian's property largely is a red herring. The more important questions – questions that Leslie never answered – were: (1) why funds allegedly diverted from the couple's shared medical practice were property of the debtor as opposed to property of MCSSG; and (2) how the so-called sham separation advanced Mihranian's and Susan's diversion scheme when Leslie's complaint indicated that **both** Mihranian and Susan were judgment debtors to one or more of the judgment creditors named in Leslie's complaint.

Another issue we should address concerns the statute of limitations applicable to actual fraudulent transfers under California law. The applicable statute provides in relevant part:

> (a) Under paragraph (1) of subdivision (a) of Section 3439.04, not later than four years after the transfer was made or the obligation was incurred or, if

23

later, not later than **one year after the transfer or obligation was or could reasonably have been discovered by the claimant.**

Cal. Civ. Code § 3439.09(a) (emphasis added).

The bankruptcy court opined that, to the extent Leslie sought to avail himself of § 3439.09(a)'s "discovery rule," Leslie should have alleged that the fraudulent nature of the transfers reasonably could not have been discovered earlier.

Leslie's opening appeal brief does not mention let alone address the statute of limitations issue. On this basis alone, we could decline to address this issue. Christian Legal Soc'y, 626 F.3d at 487–88; Brownfield, 612 F.3d at 1149 n.4.

In any event, for purposes of this appeal, suffice it to say that Leslie could not have properly invoked this discovery rule unless he alleged facts plausibly tending to demonstrate that the fraudulent nature of the transfers was not discovered earlier and reasonably could not have been discovered earlier. See Denholm v. Houghton Mifflin Co., 912 F.2d 357, 362 (9th Cir. 1990); Sun 'n Sand, Inc. v. United Cal. Bank, 21 Cal. 3d 671, 701-02 (1978); see also Ezra v. Seror (In re Ezra), 537 B.R. 924, 933 (9th Cir. BAP 2015) ("the one-year period under Cal. Civ. Code § 3439.09(a)'s discovery rule does not commence until the plaintiff has reason to discover the fraudulent nature of the transfer.")

The final issue we should address concerns Haig's request to supplement the record on appeal. In this request, Haig asked us to consider on appeal documents that were not part of this adversary proceeding but rather were part of Leslie's contemporaneous motion to substantively consolidate Mihranian's

24

bankruptcy estate with MCSSG and the four fraudulent transfer defendants. Even if we were to assume that these materials were sufficiently "before" the bankruptcy court to be considered part of the adversary proceeding record (which they were not), consideration of their contents as evidence for purposes of resolving Haig's Civil Rule 12(b)(6) dismissal motion likely would have converted the defendants' dismissal motion into a summary judgment motion. See Civil Rule 12(d). We decline on appeal to consider materials that would have converted this matter into a summary judgment proceeding when the bankruptcy court did not do so.

Therefore, Haig's motion seeking to supplement the record with the materials from the substantive consolidation proceeding is hereby ORDERED DENIED.[8]

**CONCLUSION**

For the reasons set forth above, the bankruptcy court's order dismissing with prejudice Leslie's third amended complaint is AFFIRMED.

---

[8]On the day of oral argument, this Panel delayed the start of oral argument in this appeal by roughly 30 minutes because, at the time this appeal first was called for hearing, counsel for Leslie was not present. After the 30-minute delay, the Panel proceeded with oral argument. Only counsel for Haig appeared; no one appeared for Leslie. The Panel effectively submitted Leslie's position on his appellate briefs and on the record on appeal. Shortly after the completion of oral argument, the Panel received from Leslie's counsel an informal telephonic request to continue oral argument. That request is hereby ORDERED DENIED. The request was untimely and was not presented in a procedurally proper format. See Rule 8013(a).

25